# EXHIBIT A

# FISH.

**Claire Chang**
Associate
cchang@fr.com
T: 650 839 5039

Fish & Richardson P.C.
500 Arguello Street
Suite 400
Redwood City, CA 94063

T: 650 839 5070
F: 650 839 5071

February 5, 2025

## VIA HAND DELIVERY

Siltstone Capital LLC
1401 Mckinney St., #900,
Houston, TX 77010

Re:     *Haptic, Inc. v. Apple Inc.*, **Case No. 3:24-cv-02296-JSC**

Dear Sir or Madam:

We represent Defendant Apple Inc. in the above-captioned matter, and by the enclosed subpoenas are requesting documents and deposition testimony we believe Siltstone Capital LLC to be in possession of which are relevant to the issues in dispute between Plaintiff Haptic, Inc. and Apple. As you are not a party to this case, we will work with you to minimize any inconvenience in responding to these subpoenas.

The subpoenas call for you to produce documents and appear for deposition at Fish & Richardson's offices at Fish & Richardson P.C., 909 Fannin Street, Suite 2100, Houston, TX 77010. Alternatively, you could send electronic copies of the documents to us. My email address is cchang@fr.com. We can also work with you to host your deposition at a more convenient location.

Further, although the subpoenas require the production of documents by February 19 and a deposition by March 3, we will work with you to agree on a reasonable schedule if you are unable to meet these deadlines. However, please bear in mind that we are facing upcoming court deadlines and your production and deposition are required by those deadlines.

Additionally, if you ask us to, we will treat all documents and information received from you as highly confidential and designate them for Outside Attorneys' Eyes Only as explained further in the enclosed Protective Order.

You or your attorneys, if you are represented, should not hesitate to contact me at cchang@fr.com or (650) 839-5039 with any questions or concerns. We appreciate your assistance with this matter.

Very truly yours,

*/s/ Claire Chang*

Claire Chang

2/5/25

.ev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | |
|---|---|
| HAPTIC, INC. | ) |
| *Plaintiff* | ) |
| v. | ) |
| APPLE INC. | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.   3:24-cv-02296-JSC

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                    Siltstone Capital LLC
                  1401 Mckinney St., #900, Houston, TX 77010

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A

| Place: Fish & Richardson P.C. - 909 Fannin Street, Suite 2100 Houston, TX 77010 | Date and Time:  2/19/2025 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

     The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   2/5/2025

*CLERK OF COURT*

                                    OR

_____             /s/ Claire Chang
*Signature of Clerk or Deputy Clerk*             *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Defendant Apple Inc._____, who issues or requests this subpoena, are:

Claire Chang, Fish & Richardson P.C., 500 Arguello Street, Suite 400, Redwood City, CA 94063; cchang@fr.com

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 3:24-cv-02296-JSC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____                    _____
                                                        *Server's signature*

                                                      _____
                                                        *Printed name and title*

                                                      _____
                                                        *Server's address*

Additional information regarding attempted service, etc.:

# ATTACHMENT A

## ATTACHMENT A

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

Documents sufficient to show the relationship between Siltstone Capital LLC and Haptic, Inc, including relating to any investments in Haptic, Inc. and/or any funding of this litigation (*Haptic, Inc. v. Apple Inc.,* Case No. 3:24-cv-02296-JSC).

**REQUEST FOR PRODUCTION NO. 2:**

All documents related to any evaluation, valuation, or opinions related to Haptic Inc., including its intellectual property or Knocki products.

**REQUEST FOR PRODUCTION NO. 3:**

All documents related to U.S. Patent No. 9,996,738 or any related patent, including any related evaluation, valuations, or opinions.

**REQUEST FOR PRODUCTION NO. 4:**

All documents relating to any actual or potential litigation involving U.S. Patent No. 9,996,738 or any related patent, including all communications with any individual or entity that invested in, funded, or considered investing in or funding LF Haptic LLC, Haptic, Inc. or this litigation (*Haptic, Inc. v. Apple Inc.,* Case No. 3:24-cv-02296-JSC).

**REQUEST FOR PRODUCTION NO. 5:**

All documents or agreements setting forth the actual or potential financial or ownership interests in Haptic, Inc., U.S. Patent No. 9,996,738, related patents, or this litigation (*Haptic, Inc. v. Apple Inc.,* Case No. 3:24-cv-02296-JSC).

**REQUEST FOR PRODUCTION NO. 6:**

All documents related to negotiations, evaluations, valuations, or opinions relating to the

actual or potential financial or ownership interest in Haptic, Inc., U.S. Patent No. 9,996,738, related patents or this litigation (*Haptic, Inc. v. Apple Inc.*, Case No. 3:24-cv-02296-JSC).

**REQUEST FOR PRODUCTION NO. 7:**

All executed and finalized agreements or contracts between (a) Haptic, Inc., Yaniv (Jake) Boshernitzan, Ohad Nezer and/or related entities or persons, and (b) any entity or individual that has invested in or funded Haptic, Inc. or this litigation (*Haptic, Inc. v. Apple Inc.*, Case No. 3:24-cv-02296-JSC).

**REQUEST FOR PRODUCTION NO. 8:**

All documents relating to any funding that Haptic, Inc., Yaniv (Jake) Boshernitzan, Ohad Nezer and/or related entities or persons has sought or received with respect to this litigation (*Haptic, Inc. v. Apple Inc.*, Case No. 3:24-cv-02296-JSC) or other patent enforcement efforts.

**REQUEST FOR PRODUCTION NO. 9:**

All documents showing all persons or entities with an actual or potential financial interest, direct or indirect, including ownership or litigation funding, in Haptic, Inc., U.S. Patent No. 9,996,738, related patents or any litigation asserting such patents including this litigation (*Haptic, Inc. v. Apple Inc.*, Case No. 3:24-cv-02296-JSC).

**REQUEST FOR PRODUCTION NO. 10:**

All documents describing the actual or potential financial and/or ownership interest of each person or entity identified in response to Request for Production No. 9.

**REQUEST FOR PRODUCTION NO. 11:**

All documents describing any financial benefits or payments made or to be made to each person or entity identified in response to Request for Production No. 9.

**REQUEST FOR PRODUCTION NO. 12:**

All documents describing the relationship between (a) Yaniv (Jake) Boshernitzan or Ohad Nezer and (b) any of the persons or entities identified in response to Request for Production No. 9.

**REQUEST FOR PRODUCTION NO. 13:**

Any documents (including agreements) relating to actual or potential patent licenses or patent licensing strategy among the persons or entities identified in response to Request for Production No. 9.

**REQUEST FOR PRODUCTION NO. 14:**

All communications between Siltstone Capital LLC and Haptic, Inc., Apple Inc., Yaniv (Jake) Boshernitzan, or Ohad Nezer.

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | | |
|---|---|---|
| HAPTIC, INC. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.    3:24-cv-02296-JSC |
| APPLE INC. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:              Siltstone Capital LLC
                 1401 Mckinney St., #900, Houston, TX 77010
*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:
See Attachment B

| Place: Fish & Richardson P.C. - 909 Fannin Street, Suite 2100 Houston, TX 77010 | Date and Time: 3/3/2025 9:00 am |
|---|---|

The deposition will be recorded by this method:    stenographic, audio, and video

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      2/5/2025

|  |  |
|---|---|
| *CLERK OF COURT* | OR |
| | /s/ Claire Chang |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Defendant Apple Inc.
_____, who issues or requests this subpoena, are:
Claire Chang, Fish & Richardson P.C., 500 Arguello Street, Suite 400, Redwood City, CA 94063; cchang@fr.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 3:24-cv-02296-JSC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

    ☐ I returned the subpoena unexecuted because: _____

 

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .


I declare under penalty of perjury that this information is true.


Date: _____                              _____
                                                   *Server's signature*

                                           _____
                                                   *Printed name and title*

                                           _____
                                                  *Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT B

**ATTACHMENT B**

**DEPOSITION TOPICS**

Please designate one or more persons to appear and give oral deposition testimony on your behalf regarding the topics below. Such persons designated must testify about information known or reasonably available to you.

**TOPIC NO. 1:**

All documents produced in response to the accompanying subpoena *duces tecum*.

**TOPIC NO. 2:**

Your relationship with Haptic, Inc., including relating to any investments in Haptic, Inc. and/or any funding of this litigation (*Haptic, Inc. v. Apple Inc..* Case No. 3:24-cv-02296-JSC).

**TOPIC NO. 3:**

Any evaluation, valuation, or opinions related Haptic Inc., including its intellectual property or Knocki products.

**TOPIC NO. 4:**

U.S. Patent No. 9,996,738 or any related patent, including any related evaluation, valuations, or opinions.

**TOPIC NO. 5:**

The actual or potential financial or ownership interests in U.S. Patent No. 9,996,738, related patents or this litigation (*Haptic, Inc. v. Apple Inc.,* Case No. 3:24-cv-02296-JSC), including:

- identification of the persons or entities with such interests and their relationships with Yaniv (Jake) Boshernitzan or Ohad Nezer;

- related communications, negotiations, and agreements;

- evaluations, valuations, and opinions of such interests; and

- any financial benefits made or to be made to persons with such interests.

**TOPIC NO. 6:**

Patent licensing strategy and/or policy among the persons or entities with any actual or potential financial or ownership interest in U.S. Patent No. 9,996,738, related patents or this litigation (*Haptic, Inc. v. Apple Inc.,* Case No. 3:24-cv-02296-JSC).

**TOPIC NO. 7:**

All executed and finalized agreements or contracts between (a) Haptic, Inc., Yaniv (Jake) Boshernitzan, Ohad Nezer and/or related entities or persons, and (b) any entity or individual that has invested in or funded Haptic, Inc. or this litigation (*Haptic, Inc. v. Apple Inc.,* Case No. 3:24-cv-02296-JSC).

**TOPIC NO. 8:**

Any funding that Haptic, Inc., Yaniv (Jake) Boshernitzan, Ohad Nezer and/or related entities or persons has sought or received with respect to this litigation (*Haptic, Inc. v. Apple Inc.,* Case No. 3:24-cv-02296-JSC) or other patent enforcement efforts.

**TOPIC NO. 9:**

Communications between You and Haptic, Inc., Apple Inc., Yaniv (Jake) Boshernitzan, or Ohad Nezer.

Roger A. Denning (SBN 228998)
Seth M. Sproul (SBN 217711)
FISH & RICHARDSON P.C.
12860 El Camino Real Suite 400
San Diego, CA 92130
Phone:  858-678-5070
Fax:     858-678-5099
Email: denning@fr.com
Email: sproul@fr.com

Joy B. Kete (*pro hac vice forthcoming*)
Qiuyi Wu (*pro hac vice forthcoming*)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Phone: 617-542-5070
Fax:     617-542-8906
Email: kete@fr.com
Email: qwu@fr.com

Counsel for Defendant
APPLE INC.

Davida Brook (SBN 275370)
Connor Cohen (SBN 354686)
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Fax: (310) 789-3150
dbrook@susmangodfrey.com
ccohen@susmangodfrey.com

Brian D. Melton (Texas 24010620)
Rocco Magni (Texas 24092745)
Thomas V. DelRosario (Texas 24110645)
Shaleez E. Ozlat (Texas 24110186)
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
bmelton@susmangodfrey.com
rmagni@susmangodfrey.com
tdelrosario@susmangodfrey.com
sozlat@susmangodfrey.com

Counsel for Plaintiff
HAPTIC, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HAPTIC, INC.,<br><br>               Plaintiff,<br><br>v.<br><br>APPLE INC.<br><br>               Defendant. | Case No. 24-cv-02296-JSC<br><br>**JOINT STIPULATION REGARDING STIPULATED PROTECTIVE ORDER** |

Plaintiff Haptic, Inc. ("Haptic") and Defendant Apple Inc. ("Apple") (together, the "Parties") believe that certain modifications to the N.D. Cal. Model Stipulated Protective Order For Litigation Involving Patents, Highly Sensitive Confidential Information And/Or Trade Secrets

("Model Protective Order") are warranted for clarification and to maintain the confidentiality of certain highly sensitive documents and source code.

The Parties have met and conferred regarding proposed modifications to the Model Protective Order and have agreed on most provisions except for the issues discussed below. Attached hereto as Exhibit 1 is a redline of the Model Protective Order reflecting the proposed modifications.

The Parties stipulate that the Model Protective Order, as modified by the redline in Exhibit 1, should be entered as the operative Stipulated Protective Order in this case once the issues discussed below are resolved by the Court. A form of that Stipulated Protective Order is attached as the Proposed Order hereto.

Apple is submitting herewith a declaration explaining the agreed modifications to the Model Protective Order.

The parties have not been able to reach agreement on four issues. The parties request that the Court determine whether deviation from the Model Order is appropriate, and if so, select between the parties' competing proposals on those issues. A short explanatory statement from each party regarding each issue is included below. The proposed protective order includes the language proposed by Haptic in brackets [] and yellow highlighting, and includes the language proposed by Apple in brackets [] and blue highlighting.

**1. Disputed Issue No. 1: Source Code Page Limits**

This dispute relates to Section 9(i) of the proposed protective order.

(a) **Haptic's Position**

"The model protective order contains no express limit" as "placing a blanket limit on the number of source code pages is unhelpful." *EPL Holdings, LLC v. Apple, Inc.*, No. 3:12-cv-04306, 2013 WL 2181584, at *6 (N.D. Cal. Aug. 1, 2013) (Corley, Mag.); *see also OpenTV, Inc. v. Apple, Inc.*, No. 14-cv-01622, 2014 WL 5079343, at *2 (N.D. Cal. Oct. 9, 2014) (rejecting Apple's proposal of 25 continuous and 250 total pages). Yet, to compromise and avoid future disputes, Haptic proposes reasonable presumptive limits of 20 continuous and 300 total printed source code

pages, consistent with prior agreements approved both by courts in this District and by Apple.

*Adaptix, Inc. v. Dell, Inc.*, No. 5:14-cv-01259, 2015 WL 12839125, at *7 (N.D. Cal. Sept. 8, 2015) (limits of 50 continuous pages and 10% of all code or 500 pages total); *SpaceTime3D, Inc. v. Apple Inc.*, No. 1:23-cv-00553, Dkt. 41 at 9 (W.D. Tex. Sept. 9, 2022) (limits of 20 continuous and 300 total pages). When Apple has asserted its own patents in this District, it has agreed to far higher limits than Haptic's proposal as well as no limits at all. *Apple Inc. v. Samsung Elecs. Co.*, 5:12-cv-00630, Dkt. 171-1 at 14 (N.D. Cal. May 9, 2012) (limit of 50 continuous pages or 10% of a software release, with no limit on total printed pages); *Apple Inc. v. Telefonaktiebolaget LM Ericsson*, No. 3:15-cv-00154, Dkt. 94 at 12-19 (N.D. Cal. Jun. 18, 2015) ("*Ericsson*") (no page limits).

Apple has failed to adequately explain both its deviation from the Model Order and why it proposes page limits far lower than what Apple itself has agreed to previously. *See FarStone Tech., Inc. v. Apple Inc.*, No. 8:13-cv-01537, 2014 WL 2865786, at *2-3 (C.D. Cal. June 24, 2014) (finding Apple failed to explain how its "arbitrary" page limits bore "any actual relationship to the total source code available"). Apple asserts that 10 continuous pages are sufficient to address the scope of Haptic's claims. But the parties disagree about the scope of infringement—Apple contends Back Tap is the sole accused feature, despite Haptic's Infringement Contentions identifying numerous additional accused features that work with Back Tap. Further, Apple's attempt to distinguish cases like *Spacetime3D* for having three asserted patents instead of one asserted patent is meaningless as it makes no attempt to compare the accused technologies. And in the cases Apple cites, Apple makes no attempt to describe the accused technologies or how they compare to the present case. By contrast, in this case and for claim 1 of the asserted '738 patent,

substantial page limits are necessary because claim 1 involves numerous accused software and data processing features[1] that work with Back Tap.

Apple offers no explanation for how it can disregard the scope of Haptic's infringement contentions in order to set arbitrarily low limits on pages, which appear geared to improperly narrowing the scope of the case. Apple's proposed page limits are more restrictive than typically agreed to in this District and by Apple itself, if page limits are even to be imposed at this early stage. Apple has not shown good cause for its proposed deviation from the Model Order, let alone its refusal of Haptic's compromise proposal, to which Apple has agreed previously.

### (b) Apple's Position

Source code—a set of computer instructions written in human-readable computer language—is often a closely guarded "crown jewel" of high-technology companies. *buySAFE, Inc. v. Google, Inc.*, 2014 WL 2468553, at *2 (E.D. Va. Jun. 2, 2014); *Unwired Planet LLC v. Apple Inc.*, Case No. 3-12-cv-00505, 2013 WL 1501489, at *5, 7 (D. Nev. Apr. 11, 2013) (adopting Apple's provisions, finding that "Apple considers its source code a highly valuable and potentially vulnerable trade secret, making any disclosure (even inadvertent) irreparably harmful to Apple."). Indeed, Apple's source code is one of its most important and valuable assets. Its source code for the accused products (*e.g.*, iOS running on iPhone products) is highly confidential, highly valuable, proprietary trade secret that comprises a core asset of Apple's business. Any unauthorized dissemination, even if inadvertent, could cause devastating and irreparable competitive harm. Because printing source code makes it inherently more vulnerable to

---

[1] Such features include: the Back Tap feature and related software; accelerometer related software including routing and processing impact data for sending to an applications processor; Accessibility software; Shortcuts software; Home app software; applications processor software, including for interfacing between Back Tap, Shortcuts, Accessibility, and Home App software and sending commands to terminal devices; software for gesture and sensor data generation (*e.g.*, via accelerometer and/or other sensors such as gyroscope and GPS) and data processing (*e.g.*, gesture recognition and gesture profile matching); and more, as described in detail in Haptic's infringement contentions.

1  unauthorized access and distribution, Apple has a substantial interest in limiting the number of

2  printed pages.

3        The Model Protective Order does not provide a numerical, presumptive limit on printed

4  pages, but it states in relevant part: "The Receiving Party may request paper copies of *limited*

5  *portions of source code that are reasonably necessary* for the preparation of court filings,

6  pleadings, expert reports, or other papers, or for deposition or trial[.]"  Model Order at Section

7  9(d) (emphasis added).  The parties agree that specific page limits would be useful to avoid

8  discovery disputes regarding what is "reasonably necessary," but disagree as to the amount of

9  source code that is appropriate to be printed in this case.  The parties also agree that separate page

10  limits are needed for continuous blocks of code as compared with the total number of pages.  A

11  separate (and lesser) limit for continuous blocks of printed code is necessary to prevent large

12  portions of a single source code file from being printed, which, if allowed, increases the risk of

13  harm in the event of an inadvertent disclosure (e.g., a bad actor could copy and immediately begin

14  using a large block of functional code).

15        The limits Apple proposes here are consistent with what parties have agreed to in other

16  patent cases, including in protective orders entered in this District.  *See, e.g.*, *R.N Nehushtan Trust*

17  *Ltd. v. Apple Inc.*, No. 3:22-cv-01832-WHO, Dkt. No. 56 at 19 (N.D. Cal. Oct. 6, 2022) (10 pages

18  of continuous source code and 50 pages total); *Masimo Corp. v. Apple Inc.*, No. 8:20-cv-00048,

19  Dkt. 67 at 20 (C.D. Cal. June 30, 2020) (15 pages of continuous source code and 200 pages total);

20  *SMTM Technology, LLC v. Apple, Inc.*, No. 4:19-cv-08133-YGR, Dk. No. 45 at 16 (N.D. Cal.

21  May 11, 2020) (5 pages of continuous source code and 20 pages total); *Taction Technology, Inc. v.*

22  *Apple Inc.*, No. 3:21-cv-00812-TWR-JLB, Dkt. 37 at 15 (S.D. Cal. Sept. 13, 2021) (10 pages of

23  continuous source code and 250 pages total); *Pinn, Inc. v. Apple Inc.*, No. 8:19-cv-01805-DOC-

24  JDE, Dkt. 63 at 9 (C.D. Cal. Mar. 16, 2020) (15 pages of continuous source code and 200 pages

25  total).

26        Apple's proposal regarding source code limits is also reasonable given that Haptic only

27  asserts a single patent and given the nature of Haptic's infringement contentions, which primarily

28  focus on a single optional accessibility feature available on iPhones called Back Tap.  While

1    Haptic's infringement contentions also attempt to draw in other functionalities with which Back

2    Tap interacts, the scope of discovery into those functionalities will be disputed, and in any event,

3    source code related to such functionalities is only arguably relevant to the extent it actually

4    interacts with Back Tap (and as such, is necessarily limited).  In short, Apple believes that its

5    proposed source code limits are more than enough to cover the relevant source code in this

6    relatively narrow, one-patent case.  In any event, given the early stage of litigation here and in an

7    attempt to reach common ground on this issue, Apple added to its proposal the option of

8    producing additional source code by requiring both sides to meet and confer in good faith to the

9    extent Haptic seeks to print code in excess of Apple's proposed limits.  Apple believes that

10   addressing this issue if and when such need actually arises is the best way to proceed, and that in

11   the meantime, the parties should operate with the page limits set forth in Apple's proposal.

12        Haptic's reliance on protective orders in other cases involving Apple—including in other

13   courts, involving different accused functionality and a different number of asserted patents—

14   where Apple agreed to higher source code printing limits do not justify higher limits here, because

15   the scope of each case is different.  For example, in a W.D. Tex. case (*SpaceTime3D*) relied upon

16   extensively by Haptic throughout the parties' negotiations, the Plaintiff asserted three patents

17   against not only Apple iPhones but also iPod touches, iPads, and Watch, and the accused

18   functionality related to how information is presented to the end-user via graphical user interfaces.

19   *See SpaceTime3D, Inc. v. Apple Inc.*, No. 6:22-cv-00149-ADA, Dkt. No. 1 at 14 (W.D. Tex. Feb.

20   10, 2022).  Here, in contrast, Haptic asserts a ***single*** patent against a ***single*** feature available in

21   certain versions of a ***single*** product class (i.e., iPhones).  In fact, SpaceTime3D's source code page

22   limits (20-page limit for continuous block and 300 pages total) counsel in favor of Apple's

23   proposed limits here (10 pages of continuous block and 250 pages total) because of the narrow

24   scope of this case in comparison to the broad scope of the SpaceTime3D case.[2]  Thus, Apple's

25

26   [2] The other cases Haptic cites can be similarly distinguished.  For instance, in *Apple Inc. v.
     Samsung Elecs. Co.*, Apple asserted eight patents against Samsung and the accused products

27   included Samsung's mobile phones, tablet computers, and media players.  5:12-cv-00630, Dkt. 1,
     ¶¶ 12, 16-17 (N.D. Cal. Feb. 8, 2012).  In *Apple Inc. v. Telefonaktiebolaget LM Ericsson*, seven

28

presumptive limit of 10 pages for continuous blocks of code and 250 pages total should be adopted.

### 2. Disputed Issue No. 2: Use of Source Code in Depositions and Court

This dispute relates to Sections 9(j) and 9(k) of the proposed protective order.

#### (a) Haptic's Position

Haptic proposes a highly secure source code review process, with access restrictions including keeping a single copy of printed code in locked storage or a sealed enveloped during travel, only to be opened at counsel's offices or private and locked locations, such as a locked hotel room before depositions, hearings, or trial. This process is consistent with agreements previously approved by both this Court and Apple. *Ericsson*, Dkt. 94 at 15 ("The Receiving Party may also temporarily keep the print outs at: (1) the Court for any hearing or trial … (2) deposition(s) … and (3) any intermediate location reasonably necessary to transport the print outs (*e.g.*, a hotel prior to a deposition, hearing or trial)."); *EPL Holdings*, Dkt. 76 at 20 ("For depositions, the Receiving Party shall not bring copies of any printed Source Code other than one personal copy of printed Source Code."); *FarStone*, 2014 WL 2865786, at *2-3 (allowing attorney transport of code).

By contrast, Apple proposes an illusory "review" process that is clearly designed to obstruct Haptic's ability to prosecute the case. Apple proposes Haptic's expert select code to print at a source code review but may not leave the review with any printed code. Instead, Apple will presumably deliver the code to Haptic's counsel's office in Houston, where it will be maintained in a locked and secured location for the entire duration of the litigation. Haptic would not be permitted to travel with a copy of the printed code, even if it were sealed during travel. The point

---

patents were involved and parties disputed whether the asserted patents were essential to the LTE standards. No. 3:15-cv-00154, Dkt. 1, ¶¶ 48-55 (N.D. Cal. Jan. 12, 2015). In addition, the Apple products at issue included Apple iPhones and iPads. *Id.*, ¶¶ 24-27.

of a source code review is to allow a party an opportunity to print the relevant portions of the code for subsequent study and use by the expert at their own facilities throughout the course of the litigation. Apple's proposal creates a series of never-ending in-office reviews, requiring Haptic's counsel (including Los Angeles-based counsel) and experts to either (1) constantly travel to Haptic's counsel's Houston office to review the printed portions of the code that it already selected at the computer-based source code review session, adding needless expense and delay; or else (2) coordinate with Apple and travel to Apple's counsel's offices every single time Haptic wishes to look at the source code printouts.

Apple's proposal is thus unreasonable and unworkable, which is why this Court and others have rejected it. *Id.* Indeed, Apple's proposal creates the following logistical hardships:

- Prior to depositions, Haptic's counsel would need to travel earlier than necessary and arrange for time to view code at a permitted location, thus putting improper time constraints on Haptic's deposition preparation.

- Anytime one of Haptic's experts needs to review the previously selected source code printout to draft his or her expert report, the expert would need to travel to Haptic's counsel's Houston office or else coordinate with Apple's counsel, creating significant impediments to timely and efficiently preparing an expert report.

- During a week-long trial, during which parties routinely work into the early morning hours, Haptic would be deprived of access to the previously selected source code printout to prepare for testimony. Haptic's counsel and experts would be forced to choose

between attending trial, reviewing the source code printout at Apple's counsel's office, or flying back and forth to Houston.[3]

- Overall, Haptic will be forced to incur far greater travel costs and time burdens for its counsel and experts to review the previously selected source code printout either in Houston or at Apple's counsel's offices before depositions and hearings—choosing between a highly inconvenient location and a location which puts Haptic's work product and privileged information at risk.

Apple has offered no convincing support for its proposed restrictions. In addition to a vague anecdote about some unknown person in another case leaving source code on an airplane, Apple has pointed to two out-of-district cases. *Unwired Planet LLC v. Apple Inc.*, No. 3:12-cv-00505, 2013 WL 1501489, at *4-5 (D. Nev. Apr. 11, 2013); *Valencell, Inc. v. Apple, Inc.*, No. 5:16-cv-00001, 2016 WL 7217635, at *5 (E.D.N.C. Dec. 12, 2016). And one of Apple's cases does not even discuss provisions on transporting source code. *Unwired Planet*, 2013 WL 1501489, at *4-5 (adopting blanket printing limits and expressly dismissing the Northern District of California Model Order).

Apple also argues that Haptic's proposal includes "storing Apple's source code in a hotel room (or other non-secure location) where members of the public may enter." This is incorrect. Haptic's proposal never puts the code in a location where members of the public can enter and view it. Haptic's proposal includes keeping the code in a sealed envelope during the entirety of the time when the code is in transit, and only allowing opening the code in a locked room with an

---

[3] Although § 3 of the Stipulated Protective Order carves out the use of protected material at trial from its scope, § 9(h) expressly limits the parties' access to source code printouts during trial: "The Receiving Party may request paper copies of Source Code that are reasonably necessary for ... trial."

9

expectation of privacy, such as a hotel room and outside counsel's offices. This is routinely done

in cases involving the most sensitive source code, including cases involving Apple and its code.

Thus, Apple has not shown good cause for its departure from not only the Model Order but

also this Court and Apple's own prior agreements.

### (b) **Apple's Position**

The Parties' dispute relates to how printed source code is stored and transported during the

case. As an initial matter, Haptic's argument incorrectly suggests that only Apple can maintain

printed source code during the litigation. Section 9(h), which is agreed to, states that "[t]he

Receiving Party may request paper copies of Source Code that are reasonably necessary for the

preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but

shall not request paper copies for the purposes of reviewing the source code other than

electronically as set forth in paragraphs (c)-(d) in the first instance." Under this provision, Apple

fully expects to provide Haptic's counsel with paper copies of the source code for use in this

litigation, which—among other things—will allow Haptic's counsel to work with its experts,

prepare for depositions, and prepare for trial. Such source code would then be stored in a secured,

locked area, as set forth in Apple's proposal. Nothing about this arrangement would "obstruct"

Haptic's ability to litigate this case. Nor does it require Haptic's experts to coordinate with

Apple's counsel any time they would like to review any source code printouts, as Haptic

incorrectly states; instead, Haptic's experts can coordinate with Haptic's counsel directly to review

their copies of any source code printouts.

Apple has significant concerns, however, regarding Haptic's proposal that allows its

outside counsel to *transport* Apple's printed source code in a sealed envelope or on a flash

memory stick, which could involve air or other public travel with Apple's source code, as well as

storing Apple's source code in a hotel room (or other non-secure location) where members of the

public may enter. Apple does not believe such accommodations are reasonable or necessary when

dealing with one of Apple's most important and valuable assets. Any inadvertent dissemination

could cause devastating and irreparable competitive harm. *Unwired Planet LLC,* 2013 WL

1   1501489, at *5 (adopting Apple's provisions, finding that "Apple considers its source code a

2   highly valuable and potentially vulnerable trade secret, making any disclosure (even inadvertent)

3   irreparably harmful to Apple").  Apple is best positioned to transport and secure its source code

4   because it has established practices for doing so and because it has the greatest interest protecting

5   its code.  Apple has unfortunately experienced situations where printed source code was

6   inadvertently left behind during travel (i.e., left on an airplane by opposing counsel), and for this

7   reason, routinely seeks protective order provisions requiring that any printed source code be

8   transported only by Apple and stored in a secured, locked area.  Haptic does not have the same

9   vested interest in protecting Apple's source code that Apple does.[4]

10          The Court should instead adopt Apple's proposed approach, which allows only Apple to

11  transport printed source code, such as for depositions and court proceedings/trial.  To the extent

12  Haptic seeks to use source code in a deposition, Apple has proposed provisions that require Apple

13  to provide *all* printed copies of the source code for use in the deposition.  Haptic seeks only to

14  transport a personal copy of the source code that it would presumably use to prepare itself during

15  travel for the deposition.  This is unnecessary because (i) Haptic can prepare for depositions prior

16  to travel using the printed source code it is permitted to store in a secured, locked area (i.e., outside

17  counsel's office), and (ii) to the extent Haptic arrives prior to the deposition and would like to

18  review source code, Apple has already offered a solution to Haptic; it is willing to make the source

19  code print-outs available for review at Apple outside counsel's secured deposition location.  As

20  Haptic does not protest, it is unnecessary for Haptic to travel with copies of source code for use in

21  Court proceedings or trial because Apple will undertake the burden associated with bringing its

22  printed source code to the Court and can assure that this is done in a secure manner.  *See, e.g.*,

23  *Valencell, Inc. v. Apple, Inc.*, No. 5:16-CV-1-D, 2016 WL 7217635, at *5 (E.D.N.C. Dec. 12,

24  2016) (Apple's proposal "provides the receiving party adequate access to the source code at

25

26  _____

27  [4] Haptic cites to protective order provisions from the *Ericsson* and *EP Holdings* cases.  These
    cases are nearly ten years old and do not reflect the current protections that Apple routinely
28  advocates for in its patent litigation matters.  Moreover, those cases present different facts from
    those at hand.

JOINT STIP RE STIPULATED
PROTECTIVE ORDER
Case No. 24-cv-02296-JSC

depositions without presenting the risks to the security of the source code presented by" allowing

the receiving party to bring printed copies).

Thus, Apple respectfully requests that this Court adopt its proposals for Sections 9(j) and

9(k).

### 3. Disputed Issue No. 3: Source Code in Expert Reports and Court Filings

This dispute relates to Section 9(l) of the proposed protective order.

#### (a) Haptic's Position

Apple refuses to agree to terms allowing Haptic to use source code in Court filings and

expert reports, even with proper protections. Haptic proposes the limited and confidential use of

source code in sealed expert reports, as is standard in recent cases in this District and cases

involving Apple. *Gershzon v. Meta Platforms*, No. 23-cv-00083, 2023 WL 3483294, at *3 (N.D.

Cal. May 16, 2023) (permitting "paper printouts of, or images of, limited excerpts of source code

in a pleading, court filing, expert report, trial exhibit, demonstrative, deposition exhibit/transcript,

mediation brief, and drafts of these documents"); *Finjan, Inc. v. Cisco Sys., Inc.*, No. 5:17-cv-

00072, 2019 WL 667766, at *15 (N.D. Cal. Feb. 19, 2019) ("[N]othing in this sub-Paragraph shall

prevent a Party from making such additional hard or electronic copies of Source Code as are (1)

necessary for use as exhibits at trial; (2) necessary to prepare court filings, pleadings, or other

papers (including a testifying expert's expert report), (3) necessary for deposition, or (4) otherwise

necessary for the preparation of its case."); *Taction Tech.*, 2021 WL 4150342, at *9 ("The

Receiving Party may include Source Code excerpts in expert reports, contentions, discovery

requests or responses, and other litigation documents, including internal electronic drafts of such

documents …."); *SpaceTime3D*, Dkt. 41 at 9 ("A receiving Party may include excerpts of Source

Code Material in an exhibit to a pleading, expert report, or deposition transcript …."). Although

Apple insists that Haptic's proposal would fail to protect source code, Apple has refused to

explain why it agreed to similar language in previous cases. *Taction Tech.*, 2021 WL 4150342, at

*9; *SpaceTime3D*, Dkt. 41 at 9.

Nonetheless, Apple proposes that it should be able to unilaterally deny a request by Haptic

to include source code in a court filing or expert report, if Apple deems *itself* to not have

"unreasonably withheld" agreement. Not so. Trying to support its unreasonable proposal, Apple

misplaces its reliance on this Court's decision in *EPL Holdings*. There, the Court rejected a

proposal to allow unlimited electronic copies of source code for use in filings, expert reports, and

other papers. *See EPL Holdings*, 2013 WL 2181584, at *6-7. Unlike in *EPL*, Haptic does not

request unlimited copies of source code—only to use excerpts in filings and reports when

reasonably necessary. Beyond reasonable security measures to protect Apple's source code, which

Haptic's proposal includes, Apple should have no say in how Haptic presents its case.

Nor has Apple shown good cause for usurping the Court's authority to decide in the first

instance whether any filings containing source code should be sealed, pursuant to Civil Local Rule

79-5. Importantly, in weighing the extent to which Apple's proposal in *EPL* was burdensome, this

Court relied on a since-amended version of Civil Local Rule 79-5. At the time, that Local Rule

effectively required meeting and conferring before filing any motion to seal. *Id.* at *7 ("[T]he

procedures Apple envisions are already largely accounted for in this District's Local Rules—that

is, for an administrative motion to file under seal, the moving party must include a stipulation or a

declaration that explains why a stipulation could not be obtained."). But that is no longer the case.

Local Rule 79-5 now requires a different process for motions to consider whether another party's

material should be sealed—involving neither meeting nor conferring. *See* N.D. Cal. Civ. L.R. 79-

5(c), (f) (requiring the party who designated material confidential to submit a post-filing statement

or declaration showing why a filing containing protected material should be sealed). In other

words, the Local Rules would permit Haptic to file a pleading containing limited portions of

Apple's source code without first seeking Apple's permission. Then, the burden would be on

Apple to demonstrate the need to seal Haptic's pleading. Thus, Apple's proposal would impose

obstacles far beyond what Local Rule 79-5 would require for Haptic to safely file pleadings

containing reasonably necessary excerpts of Apple's source code under seal.

Apple's proposal on expert reports also puts Haptic at a major disadvantage in any expert

challenge: Haptic cannot cite source code in reports but faces the possibility that Apple could

move to strike opinions about source code as undisclosed. To solve this issue, Haptic offered the

compromise of omitting code from expert reports in exchange for parties agreeing not to strike

opinions based on code as undisclosed. Apple refused. Apple's attempt to unilaterally dictate the

use of source code in expert reports and court filings is clearly unworkable and should be rejected.

(b) **Apple's Position**

Apple does not seek to restrict Haptic's use or ability to *cite* source code in its expert

reports—indeed, Apple has repeatedly stated that Haptic is free to add any citations to Bates and

line numbers it so desires.  Apple merely objects to Haptic's ability to electronically covert

Apple's source code from its paper form and ***copy/paste Apple source code directly into Haptic's***

***expert reports***.  As part of the same, Apple also rejected Haptic's attempt to strongarm Apple into

agreeing not to seek to strike Haptic's opinions based on whether it properly discloses citations to

source code support in its expert reports as undisclosed.  Nothing is stopping Haptic from properly

disclosing its theories and supporting evidence without electronically copying the code straight

into its report.

Apple has proposed that Haptic must obtain Apple's express written permission prior to

copying Apple source code into any documents, including expert reports.  Here, Apple expects

that Haptic can sufficiently disclose any expert opinions regarding source code by simply citing to

the printed source code by Bates number and line number(s).  To the extent Haptic demonstrates a

need to copy a portion of source code into an expert report—i.e., if for some reason a citation by

Bates and line number would be insufficient, which Haptic has yet to articulate—Apple is willing

to consider such requests on a case-by-case basis.  This approach proposed by Apple will not limit

1   Haptic's ability to present its case and is reasonable "[g]iven the high risk associated with

2   producing electronic copies of source code and then transferring those copies online[.]" *EPL*

3   *Holdings, LLC v. Apple, Inc.*, No. 3:12-cv-04306-JST, Dkt. 62 at 9-10 (May 20, 2013). Indeed,

4   limiting the inclusion of code in expert reports will not impede Haptic's ability to present its case

5   but it will "ensure that only those electronic copies that are absolutely necessary will be made."

6   *Id.*

7        Haptic's proposal fails to protect Apple's source code, which is otherwise not available in

8   electronic form to Haptic. Allowing copy/pasting would also allow Haptic to be able to get the

9   code into such form, presumably by turning the source code—which is printed on physical paper

10   for a reason—to be read into a computer program and held in electronic form. Haptic relies on

11   *SpaceTime3D* protective order to support its proposed limits on printed source code pages yet

12   ignores that the *SpaceTime3D* protective order includes the same prohibitions against copying

13   source code that Apple proposes here. Indeed, under Haptic's proposal, which does not even

14   propose limits on what could be copied, it would be allowed to copy hundreds of pages of Apple's

15   source code directly into an expert report. If Apple refused such a request, Apple would be

16   prohibited from arguing that the expert failed to disclose a particular opinion related to that code.

17   Allowing Haptic such quasi-electronic access risks inadvertent disclosure of Apple's crown jewel,

18   one that is not regularly allowed in protective orders in this District. *See, e.g., R.N Nehushtan*

19   *Trust Ltd*, Dkt. No. 56 at 20-21 (N.D. Cal. Oct. 6, 2022); *SMTM Technology, LLC*, Dk. No. 45 at

20   19-20. The potential harm is far too high, particularly compared to Haptic's inability to articulate

21   why citation to Bates and line number would not accomplish the exact same goals on its side.

22      **4. Disputed Issue No. 4: Data Security Requirements**

23        This dispute relates to Section 14.5 of the proposed protective order.

24         **(a) Haptic's Position**

25        Apple's proposed data security provisions are an unnecessary departure from the Model

26   Order, which already provides: "Protected Material must be stored and maintained by a Receiving

27   Party at a location and in a secure manner that ensures that access is limited to the persons

28   authorized under this Order." Unsatisfied, Apple insists on (1) burdensome and ambiguous

JOINT STIP RE STIPULATED
PROTECTIVE ORDER
Case No. 24-cv-02296-JSC

1    security protocols in Section 14.5(a) and (2) invasive discovery into law firm processes—far

2    beyond what is necessary to contain any data breach in Section 14.5(e). The high burden coupled

3    with ambiguous standards could result in unnecessary ancillary litigation. Attempting to

4    compromise with Apple, Haptic has proposed provisions that already go "above and beyond" the

5    Model Order, requiring heightened security standards coupled with obligations to notify the

6    opposing party of a data breach and to provide information that is reasonably necessary to contain,

7    mitigate, or remediate a data breach. *Cf. Affinity Cred. Union v. Apple Inc.*, No. 22-cv-04174,

8    2024 WL 1344211, at *2-3 (N.D. Cal. Mar. 29, 2024) (rejecting Apple's proposed language on

9    data security and data breach discovery).

10        **Section 14.5(a).** In rejecting the very cybersecurity protocols Apple proposes here, the

11    court in *Affinity* observed that, in another case—specifically, *Floyd v. Amazon.com Inc.*, No. 2:22-

12    cv-01599, 2023 WL 8701667 (W.D. Wash. Dec. 15, 2023)—"the plaintiffs and their experts spent

13    250 hours over the course of eight weeks to implement the[se] protocols." *Affinity*, 2024 WL

14    1344211, at *2; *see Affinity*, Dkt. 72 at 3; *Affinity*, Dkt. 72-6 ¶ 2. Here too, Apple's proposal would

15    cause needless expense and delay for Haptic's counsel, experts, and consultants. By contrast, the

16    compromise language Haptic proposes is "more than sufficient" to ensure safe treatment of

17    protected material. *Affinity*, 2024 WL 1344211, at *2 (adopting identical language). Along similar

18    lines, the *Affinity* court rejected Apple's language on multi-factor authentication because it "is

19    vague, and it is unclear how the Court would enforce this provision." *Id.* Specifically, requiring

20    multi-factor authentication "for any access" to protected material could require authentication

21    either at each login to the computer—which would be standard, and which Haptic's proposal

22    covers—or at each opening of a draft brief, letter, or other paper containing protected material. *Id.*

23    That ambiguity has no place in an order intended to ensure careful and efficient discovery of

24    sensitive material. To the extent Apple now points to *Floyd*—an out-of-district decision—in

25    support of its unnecessary data-security proposals, that decision is a cautionary tale. The *Affinity*

26    court, in this District, recognized as much by refusing to repeat *Floyd*'s mistake. *Id.*

27        **Section 14.5(e).** Apple's data security discovery proposal is unreasonable too. Apple

28    demands discovery into the processes and policies of the party and law firm experiencing the data

JOINT STIP RE STIPULATED
PROTECTIVE ORDER
Case No. 24-cv-02296-JSC

1  breach that appear directed to setting up litigation. The parties already agree that a party affected

2  by a data breach would share "any information ... that is reasonably necessary to contain,

3  mitigate, or remediate such Data Breach." And Apple has no explanation for why it would need

4  more details on a law firm's internal policies and processes beyond what is necessary to contain,

5  mitigate, or remediate such Data Breach. Rather, "Apple's language would invite satellite disputes

6  unrelated to the resolution of this action." *Id.* at *3 (resolving disputed proposals like the parties'

7  as to Section 14.5(d) against Apple in favor of plaintiff's proposal). Again, Apple misplaces its

8  reliance on *Floyd*, where the Washington district court did not discuss—and the plaintiff did not

9  even oppose—the specific requirement Apple now proposes at Section 14.5(e). *Floyd*, 2023 WL

10  8701667, at *2; *see also Floyd*, Dkt. 76-1 at 15-16.

11        In short, the Model Order is silent on data breach discovery for good reason. Since Section

12  14.5 is unnecessary, and Apple has failed to show good cause for imposing it, the Court could

13  easily resolve this dispute by striking the whole section. Yet, to the extent the Court finds it

14  helpful for the protective order to diverge from the Model Order by mandating detailed data

15  security measures, Haptic's compromise proposals reflect a reasonable approach.

16                    (b) **Apple's Position**

17        The Court should adopt Apple's proposed data security provisions in Sections 14.5(a) and

18  (e).  Data security is something that all companies, including law firms, must take very seriously.

19  Recent high-profile data security breaches at law firms have made these sorts of safeguards more

20  important than ever.[5] In 2022 alone, more than 100 law firms reported data breaches to authorities

21  across 17 states, exceeding the 88 breaches and 46 breaches reported in 2021 and 2020,

22  respectively.[6]  The American Bar Association (ABA) has specifically recognized "[d]ata breaches

23

---

24  [5] *See, e.g.*, https://news.bloomberglaw.com/business-and-practice/law-firm-cyberattacks-grow-putting-operations-in-legal-peril (identifying five class actions filed in 2023 against law firms claiming failure to sufficiently guard against cyberattacks).

25

26  [6] Xiumei Dong, Law Firm Data Breaches Continue to Rise, Law360 (Feb. 6, 2023), available at https://www.law360.com/pulse/articles/1573082/law-firm-data-breaches-continue-to-rise; *see also* Dan Roe, Cyberattacks 'Inevitable' for Law Firms, Highlighting Need for Comprehensive

27  Incident Response Plans, The American Lawyer (Jan. 10, 2023), available at

28  https://www.law.com/americanlawyer/2023/01/10/cyberattacks-inevitable forlaw-firms-highlighting-need-for-comprehensive-incident-response-plans/?slreturn=20230401100619.

JOINT STIP RE STIPULATED
                                                                     PROTECTIVE ORDER
                                                                     Case No  24-cv-02296-JSC

and cyber threats involving or targeting lawyers and law firms are a major…threat facing the legal profession. As custodians of highly sensitive information, law firms are inviting targets for hackers." ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 483, Oct. 17, 2018.

*Section 14.5(a)*. Apple proposes reasonable provisions requiring the implementation of an information security management system ("ISMS") to safeguard protected material and—critically—requiring that ISMS systems used to maintain protected material in this case satisfy certain industry-accepted standards, such as the International Organization for Standardization's 27001 standard, the National Institute of Standards and Technology's (NIST) 800-53 standard, the Center for Internet Security's Critical Security Controls standard, or equivalent standards.  In contrast, Haptic's proposal simply requires the parties to implement ISMS systems "designed to protect against any reasonably anticipated threats or hazards" without any tie to industry-accepted standards.  This vague language should be rejected in favor of Apple's proposal which gives the parties clear guidance regarding the type of ISMS systems that are acceptable under the protective order based on industry norms, and with which many law firms and vendors already comply.

Haptic focuses on an antitrust case, *Affinity Cred. Union v. Apple Inc.*, 2024 WL 1344211, at *2-3 (N.D. Cal. Mar. 29, 2024), where the Court declined to require the specific ISMS systems proposed by Apple.  But courts in this district have adopted the requirement for specific ISMS systems in cases related to intellectual property, where it is more likely that highly confidential technical documents will be produced in discovery.  *See, e.g., Apple Inc. v. Rivos, Inc.*, No. 5:22-cv-2637, Dkt. 118 at 14 (N.D. Cal. Oct. 31, 2022).  Indeed, courts are increasingly recognizing the importance of complying with ISMS requirements at least at the level adopted by industry-wide standards, such as those proposed by Apple.  *See, e.g., Floyd v. Amazon.com Inc.*, No. C22-1599-KKE, 2023 WL 8701667, at *2 (W.D. Wash. Dec. 15, 2023) ("Plaintiff also argues that it would be burdensome to require individuals or experts to comply with the ISMS requirement [but] Plaintiff has not explained why an exception is warranted here. Defendants' proposal safeguards protected material via industry-standard requirements[.]").

1    ***Section 14.5(e).*** Apple proposes requiring a Receiving Party to provide copies of its ISMS

2    policies following a data breach, which is a standard term in commercial contracts with data

3    security provisions. *See Floyd v. Amazon.com Inc.*, No. C22-1599-KKE, 2023 WL 8701667, at *2

4    (W.D. Wash. Dec. 15, 2023) (finding Defendants' proposal, which required parties and anyone

5    else accessing protected material to "implement an information security management system

6    ('ISMS')," "safeguards protected material via ***industry-standard requirements***") (emphasis

7    added). Haptic proposes excluding this provision. The purpose of the provision is to aid in post-

8    breach investigation, which is critical to assessing the scope of potentially compromised Protected

9    Materials and in preventing future data breaches. Apple respectfully requests that the Court

10   include its proposed data security provisions.

11        In light of the foregoing, and for good cause shown, the Parties jointly request that the

12   Court enter their Stipulated Protective Order once the issues above are resolved by the Court.

13

14   Dated: June 4, 2024                      FISH & RICHARDSON P.C.

15                                            By: */s/ Joy B. Kete*
                                                  Joy B. Kete
16

17                                            *Attorneys for Defendant*
                                              *Apple Inc.*
18

19   Dated: June 4, 2024                      SUSMAN GODFREY LLP

20                                            By: */s/ Connor Cohen*
                                                  Connor Cohen
21

22                                            *Attorneys for Plaintiff*
                                              *Haptic, Inc.*
23

24                                   **ATTESTATION**

25        Pursuant to Civ. Local Rule 5.1(i)(3) regarding signatures, I attest under penalty of perjury

26   that concurrence in the filing of this document has been obtained from counsel for Haptic, Inc.

27                                            */s/ Joy B. Kete*
                                              Joy B. Kete
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| HAPTIC, INC., | Case No. 24-cv-02296-JSC |
| Plaintiff, | [PROPOSED] STIPULATED PROTECTIVE ORDER FOR LITIGATION INVOLVING PATENTS, HIGHLY SENSITIVE CONFIDENTIAL INFORMATION AND/OR TRADE SECRETS |
| v. | |
| APPLE INC. | |
| Defendant. | |

1. **PURPOSES AND LIMITATIONS**

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 14.4, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

2.    <u>DEFINITIONS</u>

2.1    <u>Challenging Party</u>: a Party or Non-Party that challenges the designation of information or items under this Order.

2.2    <u>"CONFIDENTIAL" Information or Items</u>: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

2.3    <u>Counsel (without qualifier)</u>: Outside Counsel of Record and House Counsel (as well as their support staff).

2.4    [~~Optional:~~ <u>Designated House Counsel</u>: House Counsel who seek access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this matter~~.]~~.

2.5    <u>Designating Party</u>: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL~~,~~ or," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [~~Optional:~~ or "HIGHLY CONFIDENTIAL – SOURCE CODE~~"]~~."

2.6    <u>Disclosure or Discovery Material</u>: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

2.7    <u>Expert</u>: a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

2.8    <u>"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items</u>: extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.9    ~~[Optional:~~ "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items: extremely sensitive "Confidential Information or Items" ~~representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics~~ that ~~define or otherwise describe~~contain Source Code as defined below in ~~detail the algorithms or structure of software or hardware designs,~~Section 2.18, the disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means~~.]~~.

2.10    House Counsel: attorneys who are employees of a party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.11    Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.12    Outside Counsel of Record: attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.13    Party: any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.14    Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.15    Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16    Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," ~~or as~~"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY~~.~~ ~~[Optional:~~," or as "HIGHLY CONFIDENTIAL – SOURCE CODE~~."]~~."

2.17    Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

United States District Court
Northern District of California

2.18    Source Code: extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

3.    SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order. Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Protected Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Protected Material to an individual who prepared the Protected Material.

4.    DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action,

4

1  including the time limits for filing any motions or applications for extension of time pursuant to

2  applicable law.

3  5.      DESIGNATING PROTECTED MATERIAL

4         5.1     Exercise of Restraint and Care in Designating Material for Protection. Each Party

5  or Non-Party that designates information or items for protection under this Order must take care to

6  limit any such designation to specific material that qualifies under the appropriate standards. To

7  the extent it is practical to do so, the Designating Party must designate for protection only those

8  parts of material, documents, items, or oral or written communications that qualify -- so that other

9  portions of the material, documents, items, or communications for which protection is not

10  warranted are not swept unjustifiably within the ambit of this Order.

11         Mass, indiscriminate, or routinized designations are prohibited. Designations that are

12  shown to be clearly unjustified or that have been made for an improper purpose (e.g., to

13  unnecessarily encumber or retard the case development process or to impose unnecessary

14  expenses and burdens on other parties) expose the Designating Party to sanctions.

15         If it comes to a Designating Party's attention that information or items that it designated

16  for protection do not qualify for protection at all or do not qualify for the level of protection

17  initially asserted, that Designating Party must promptly notify all other parties that it is

18  withdrawing the mistaken designation.

19         5.2     Manner and Timing of Designations. Except as otherwise provided in this Order

20  (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered,

21  Disclosure or Discovery

22         Material that qualifies for protection under this Order must be clearly so designated before

23  the material is disclosed or produced.

24         Designation in conformity with this Order requires:

25         (a) for information in documentary form (e.g., paper or electronic documents, but

26  excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party

27  affix the legend "CONFIDENTIAL — of " "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

United States District Court
Northern District of California

United States District Court
Northern District of California

1    ONLY" [Optional]." or "HIGHLY CONFIDENTIAL – SOURCE CODE"]" to each page that

2    contains protected material. If only a portion or portions of the material on a page qualifies for

3    protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making

4    appropriate markings in the margins) and must specify, for each portion, the level of protection

5    being asserted. Where documents are produced in native electronic format, such electronic

6    documents shall be designated for protection under this Order by appending to the file names or

7    designators information indicating whether the document contains "CONFIDENTIAL,"

8    "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "HIGHLY

9    CONFIDENTIAL - SOURCE CODE," material, or shall use any other reasonable method for so

10    designating Protected Material produced in electronic format. If electronic documents are printed,

11    the party printing the electronic documents shall affix a legend to the printed document

12    corresponding to the designation of the Designating Party and including the production number

13    and designation associated with the native file. No one shall seek to use in this litigation a .tiff,

14    .pdf or other image format version of a document produced in native electronic format without

15    first (1) providing a copy of the image format version to the Producing Party so that the Producing

16    Party can review the image to ensure that no information has been altered, and (2) obtaining the

17    consent of the Producing Party, which consent shall not be unreasonably withheld.

18        A Party or Non-Party that makes original documents or materials available for inspection

19    need not designate them for protection until after the inspecting Party has indicated which material

20    it would like copied and produced. During the inspection and before the designation, all of the

21    material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL –

22    ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants

23    copied and produced, the Producing Party must determine which documents, or portions thereof,

24    qualify for protection under this Order. Then, before producing the specified documents, the

25    Producing Party must affix the appropriate legend ("CONFIDENTIAL" or," "HIGHLY

26    CONFIDENTIAL – ATTORNEYS' EYES ONLY" [Optional]." or "HIGHLY CONFIDENTIAL

27    – SOURCE CODE]) to each page that contains Protected Material. If only a portion or portions of

28                                    6

the material on a page qualifies for protection, the Producing Party also must clearly identify the

protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for

each portion, the level of protection being asserted.

(b) for testimony given in deposition or in other pretrial or trial proceedings, that the

Designating Party identify on the record ~~before the close of the deposition, hearing,~~ or ~~other~~

~~proceeding~~within fourteen (14) days of receipt of the transcript of the testimony, all protected

testimony and specify the level of protection being asserted. ~~When it is impractical to identify~~

~~separately each portion of testimony that is entitled to protection and it appears that substantial~~

~~portions of the testimony may qualify for protection, the Designating Party may invoke on the~~

~~record (before the deposition, hearing, or other proceeding is concluded)~~ All information disclosed

during a ~~right to have up to 21 days to identify the specific portions of the testimony as to which~~

~~protection is sought and to specify the level of protection being asserted. Only those portions of~~

~~the testimony that are appropriately designated for protection within the 21 days~~deposition shall be

~~covered by the provisions of this Stipulated Protective Order. Alternatively, a Designating Party~~

~~may specify, at the deposition or up to 21 days afterwards if that period is properly invoked, that~~

~~the entire transcript shall be treated as~~deemed "CONFIDENTIAL" ~~or "HIGHLY~~

~~CONFIDENTIAL~~ – ATTORNEYS' EYES ONLY.~~"~~" until the time within which it may be

appropriately designated as provided for herein has passed.

Parties shall give the other parties notice if they reasonably expect a deposition, hearing or

other proceeding to include Protected Material so that the other parties can ensure that only

authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound"

(Exhibit A) are present at those proceedings. The use of a document as an exhibit at a deposition

shall not in any way affect its designation as "CONFIDENTIAL~~,~~," "HIGHLY CONFIDENTIAL

– ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL – ~~ATTORNEYS' EYES~~

~~ONLY~~SOURCE CODE."

Transcripts containing Protected Material shall have an obvious legend on the title page

that the transcript contains Protected Material, and the title page shall be followed by a list of all

pages (including line numbers as appropriate) that have been designated as Protected Material and

the level of protection being asserted by the Designating Party. The Designating Party shall inform

the court reporter of these requirements. Any transcript ~~that is prepared before the expiration of a~~

~~21-day period for designation~~ shall be treated ~~during that period~~ as if it had been designated

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety for the 14 days

following its receipt, unless otherwise agreed. After the expiration of that period, the transcript

shall be treated only as actually designated. In the event the deposition is videotaped, the original

and all copies of the videotape shall be marked by the video technician to indicate that the contents

of the videotape are subject to this Protective Order, substantially along the lines of "This

videotape contains confidential testimony used in this case and is not to be viewed or the contents

thereof to be displayed or revealed except pursuant to the terms of the operative Protective Order

in this matter or pursuant to written stipulation of the parties."

     (c) for information produced in some form other than documentary and for any other

tangible items, that the Producing Party affix in a prominent place on the exterior of the container

or containers in which the information or item is stored the legend "CONFIDENTIAL~~," or,~~"

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY~~," [Optional:,~~" or "HIGHLY

CONFIDENTIAL – SOURCE CODE~~,] .~~" If only a portion or portions of the information or item

warrant protection, the Producing Party, to the extent practicable, shall identify the protected

portion(s) and specify the level of protection being asserted.

     5.3    <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to

designate qualified information or items does not, standing alone, waive the Designating Party's

right to secure protection under this Order for such material. Upon timely correction of a designation,

the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with

the provisions of this Order. Notwithstanding the above, a subsequent designation of

"CONFIDENTIAL," "CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "CONFIDENTIAL

– ATTORNEYS' EYES ONLY – SOURCE CODE" shall apply on a going forward basis and

shall not disqualify anyone who reviewed "CONFIDENTIAL," "CONFIDENTIAL –

United States District Court
Northern District of California

1  ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY –

2  SOURCE CODE" materials while the materials were not marked "CONFIDENTIAL –

3  ATTORNEYS' EYES ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY –

4  SOURCE CODE" from engaging in the activities set forth in Section 8.

5  6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6      6.1    Timing of Challenges. Any Party or Non-Party may challenge a designation of

7  confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality

8  designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic

9  burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to

10  challenge a confidentiality designation by electing not to mount a challenge promptly after the

11  original designation is disclosed.

12      6.2    Meet and Confer. The Challenging Party shall initiate the dispute resolution

13  process by providing written notice of each designation it is challenging and describing the basis

14  for each challenge. To avoid ambiguity as to whether a challenge has been made, the written

15  notice must recite that the challenge to confidentiality is being made in accordance with this

16  specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in

17  good faith and must begin the process by conferring directly (in voice to voice dialogue; other

18  forms of communication are not sufficient) within 14 days of the date of service of notice. In

19  conferring, the Challenging Party must explain the basis for its belief that the confidentiality

20  designation was not proper and must give the Designating Party an opportunity to review the

21  designated material, to reconsider the circumstances, and, if no change in designation is offered, to

22  explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of

23  the challenge process only if it has engaged in this meet and confer process first or establishes that

24  the Designating Party is unwilling to participate in the meet and confer process in a timely

25  manner.

26      6.3    Judicial Intervention. If the Parties cannot resolve a challenge without court

27  intervention, the Designating Party shall file and serve a motion to retain confidentiality under

28

1    Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within 21 days of

2    the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer

3    process will not resolve their dispute, whichever is earlier.[1] Each such motion must be

4    accompanied by a competent declaration affirming that the movant has complied with the meet

5    and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to

6    make such a motion including the required declaration within 21 days (or 14 days, if applicable)

7    shall automatically waive the confidentiality designation for each challenged designation. In

8    addition, the Challenging Party may file a motion challenging a confidentiality designation at any

9    time if there is good cause for doing so, including a challenge to the designation of a deposition

10   transcript or any portions thereof. Any motion brought pursuant to this provision must be

11   accompanied by a competent declaration affirming that the movant has complied with the meet

12   and confer requirements imposed by the preceding paragraph.

13       The burden of persuasion in any such challenge proceeding shall be on the Designating

14   Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose

15   unnecessary expenses and burdens on other parties) may expose the Challenging Party to

16   sanctions. Unless the Designating Party has waived the confidentiality designation by failing to

17   file a motion to retain confidentiality as described above, all parties shall continue to afford the

18   material in question the level of protection to which it is entitled under the Producing Party's

19   designation until the court rules on the challenge.

20   7.    ACCESS TO AND USE OF PROTECTED MATERIAL

21       7.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed or

22   produced by another Party or by a Non-Party in connection with this case only for prosecuting,

23   defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to

24   the categories of persons and under the conditions described in this Order. When the litigation has

25

26   _____

27   [1] Alternative: It may be appropriate in certain circumstances for the parties to agree to shift the burden to move on the Challenging Party after a certain number of challenges are made to avoid an abuse of the process. The burden of

28   persuasion would remain on the Designating Party.

United States District Court
Northern District of California

1   been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL

2   DISPOSITION).

3        Protected Material must be stored and maintained by a Receiving Party at a location and in

4   a secure manner[2] that ensures that access is limited to the persons authorized under this Order.

5        7.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered

6   by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any

7   information or item designated "CONFIDENTIAL" only to:

8        (a) the Receiving Party's Outside Counsel of Record in this action, ~~as well as~~

9   ~~employees~~such counsel's paralegals and staff, and any copying or clerical litigation support

10  services working at the direction of such counsel, paralegals, and staff, and any other employees or

11  vendors of said Outside Counsel of Record to whom it is reasonably necessary to disclose the

12  information for this litigation ~~and who have signed the "Acknowledgment and Agreement to Be~~

13  ~~Bound" that is attached hereto as Exhibit A~~;

14  ~~(b) the officers, directors, and employees (including House Counsel) of the Receiving~~

15  ~~Party to whom disclosure is reasonably necessary for this litigation and who have signed the~~

16  ~~"Acknowledgment and Agreement to Be Bound" (Exhibit A);~~

17  ~~(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is~~

18  ~~reasonably necessary for this litigation and who have signed the "Acknowledgment and~~

19  ~~Agreement to Be Bound" (Exhibit A);~~

20  ~~(d) the court and its personnel;~~

21  ~~(e) court reporters and their staff, professional jury or trial consultants, and Professional~~

22  ~~Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the~~

23  ~~"Acknowledgment and Agreement to Be Bound" (Exhibit A);~~

24  ~~(f) during their depositions, witnesses in the action to whom disclosure is reasonably~~

25  ~~necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).~~

26

27  [2] It may be appropriate under certain circumstances to require the Receiving Party to store any electronic Protected
    Material in password-protected form.

28                                              11                           STIPULATED PROTECTIVE ORDER
                                                                             Case No. 24-cv-02296-JSC

United States District Court
Northern District of California

United States District Court
Northern District of California

1   ~~unless otherwise agreed by the Designating Party or ordered by the court. Pages of~~

2   ~~transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be~~

3   ~~separately bound by the court reporter and may not be disclosed to anyone except as permitted~~

4   ~~under this Stipulated Protective Order.~~

5       ~~(g) the author or recipient of a document containing the information or a custodian or other~~

6   ~~person who otherwise possessed or knew the information.~~

7       ~~Disclosure of "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY" [*Optional*:~~

8   ~~and "HIGHLY CONFIDENTIAL — SOURCE CODE"] Information or Items. Unless otherwise~~

9   ~~ordered by the court or permitted in writing by the Designating Party, a Receiving Party may~~

10  ~~disclose any information or item designated "HIGHLY CONFIDENTIAL — ATTORNEYS'~~

11  ~~EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL — SOURCE CODE"] only to:~~

12      ~~(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of~~

13  ~~said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for~~

14  ~~this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is~~

15  ~~attached hereto as Exhibit A;~~

16      ~~[(b) *Optional, as deemed appropriate in case-specific circumstances*: Designated House~~

17  ~~Counsel of the Receiving Party³ (1) who has no involvement in competitive decision-making, (2)~~

18  ~~to whom disclosure is reasonably necessary for this litigation, (3) who has signed the~~

19  ~~"Acknowledgment and Agreement to Be Bound" (Exhibit A), and (4) as to whom the procedures~~

20  ~~set forth in paragraph 7.4(a)(1), below, have been followed];⁴~~

21      ~~(c) Experts~~(b) with respect to Discovery Material produced by the Plaintiff, not more than

22

23  _____

24  ~~³ It may be appropriate under certain circumstances to limit the number of Designated House Counsel who may access "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY" information under this provision.~~

25  ~~⁴ This Order contemplates that Designated House Counsel shall not have access to any information or items designated "HIGHLY CONFIDENTIAL — SOURCE CODE." It may also be appropriate under certain circumstances~~

26  ~~to limit how Designated House Counsel may access "HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY" information. For example, Designated House Counsel may be limited to viewing "HIGHLY CONFIDENTIAL —~~

27  ~~ATTORNEYS' EYES ONLY" information only if it is filed with the court under seal, or in the presence of Outside Counsel of Record at their offices.~~

28                                  12                              STIPULATED PROTECTIVE ORDER
                                                                Case No. 24-cv-02296-JSC

1    three (3) House Counsel of the Receiving Party (1) to whom disclosure is reasonably necessary for

2    this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit

3    A), and (3) as to whom the procedures set forth in ~~paragraph~~Section 7.~~4~~5(a)(~~2~~1), below, have been

4    followed~~;~~:

5           (c) Experts (as defined in this Order), as well as their immediate support staff, of the

6    Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have

7    signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), (3) as to whom the

8    procedures set forth in Section 7.5(a)(2), below, have been followed, (4) such expert is not a

9    current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the

10   time of retention to become an officer, director or employee of a Party or of a competitor of a

11   Party, and (5) such expert accesses the materials in the United States only, and does not transport

12   them to or access them from any foreign jurisdiction;

13          (d) the court and its personnel, as well as the jury;

14          (e) court reporters, stenographers, and videographers retained to record testimony taken in

15   this action, as well as their staff~~.~~;

16          (f) professional jury or trial consultants,~~[5] and Professional Vendors~~ and graphics,

17   translation, or design personnel to whom disclosure is reasonably necessary for this litigation who

18   have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

19          (g) during their depositions, the author or recipient of a document containing the

20   information or a custodian or other person who otherwise possessed, knew, or had access to the

21   information;[6]

22          (h) mock jurors who have signed an undertaking or agreement consistent with this

23   Stipulated Protective Order agreeing not to publicly disclose Protected Material and to keep any

24   _____

25   [5] ~~Alternative: The parties may wish to allow disclosure of information not only to professional jury or trial~~

26   ~~consultants, but also to mock jurors, to further trial preparation. In that situation, the parties may wish to draft a simplified, precisely tailored Undertaking for mock jurors to sign.~~

27   [6] For third-party depositions of former party employees, the parties will meet and confer in good faith beforehand to

28   reach agreement on the categories of confidential documents that may be shown to the witness.

information concerning Protected Material confidential; and

(i) any mediator who is selected to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(j) any other person with the prior written consent of the Producing Party, which consent shall not be unreasonably withheld.

7.3    Disclosure of "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, provided that such Outside Counsel exercises no competitive decision-making authority on behalf of the client, as well as such counsel's paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff, and any other employees or vendors of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b) with respect to Discovery Material produced by the Plaintiff, not more than three (3) House Counsel of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgement to Be Bound" (Exhibit A) and (3) as to whom the procedures set forth in Section 7.5(a)(1), below, have been followed;

(c) Experts of the Receiving Party, as well as their immediate support staff, (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), (3) as to whom the procedures set forth in Section 7.5(a)(2), below, have been followed, (4) such expert is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director, or employee of a Party or of a competitor of a Party, (5) such expert or consultant exercises no competitive decision-making authority on behalf of the retaining Party, and (6) such expert or consultant accesses the materials in the United States only, and does not transport them

14

1    to or access them from any foreign jurisdiction;

2         (d) the court and its personnel, as well as the jury;

3         (e) court reporters, stenographers, and videographers retained to record testimony taken in

4    this action, as well as and their staff;

5         (f) professional jury or trial consultants and graphics, translation, or design personnel to

6    whom disclosure is reasonably necessary for this litigation and who have signed the

7    "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

8         (f)(g) during their depositions, the author or recipient of a document containing the

9    information or a custodian or other person who otherwise possessed, knew, or knewhad access to

10   the information.;[7]

11        7.4 Procedures for Approving or Objecting to Disclosure of "(h) any mediator who is

12   selected to hear this matter, and his or her staff, subject to their agreement to maintain

13   confidentiality to the same degree as required by this Protective Order; and

14        (i) any other person with the prior written consent of the Producing Party, which consent

15   shall not be unreasonably withheld.

16        In addition, a Party may disclose arguments and materials derived from Discovery Material

17   designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [Optional:to mock

18   jurors who have signed an undertaking or agreement consistent with this Stipulated Protective

19   Order agreeing not to publicly disclose Protected Material and to keep any information concerning

20   Protected Material confidential. A Party may not disclose to mock jurors any original, as-

21   produced materials or information (including, for example, documents, deposition testimony, or

22   interrogatory responses) produced by another Party designated as "HIGHLY CONFIDENTIAL —

23   ATTORNEYS' EYES ONLY."

24        7.4    Disclosure of "HIGHLY CONFIDENTIAL – SOURCE CODE"]" Information or

25   Items to Designated House. Unless otherwise ordered by the court or permitted in writing by the

---

[7] For third-party depositions of former party employees, the parties will meet and confer in good faith beforehand to
reach agreement on the categories of confidential documents that may be shown to the witness.

Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" only to:

(a) the Receiving Party's Outside Counsel[8] or of Record in this action, provided that such Outside Counsel exercises no competitive decision-making authority on behalf of the client, as well as such counsel's paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(b) Experts[9] of the Receiving Party, as well as their immediate support staff, (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), (3) as to whom the procedures set forth in Section 7.5(a)(2), below, have been followed, (4) such expert is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party, and (5) such expert or consultant exercises no competitive decision-making authority on behalf of the retaining Party;

(c) the court and its personnel, as well as the jury;

(d) court reporters, stenographers, and videographers retained to record testimony taken in this action, as well as their staff;

(e) any mediator who is selected to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order;

(f) during their depositions, the author or recipient of a document containing the information or a custodian or other person who otherwise possessed, knew, or had access to the information;[10]

---

[8] *Alternative:* The parties may exchange names of a certain number of Designated House Counsel instead of following this procedure.

[9] *Alternative:* "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information or items may be disclosed to an Expert without disclosure of the identity of the Expert as long as the Expert is not a current officer, director, or employee of a competitor of a Party or anticipated to become one.

[10] For third-party depositions of former party employees, the parties will meet and confer in good faith beforehand to reach agreement on the categories of confidential documents that may be shown to the witness.

United States District Court
Northern District of California

1    (g) any other person with the prior written consent of the Producing Party, which consent

2    shall not be unreasonably withheld.

3    7.5    Procedures for Approving or Objecting to Disclosure of "CONFIDENTIAL,"

4    "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or "HIGHLY CONFIDENTIAL –

5    SOURCE CODE" Information or Items.

6    (a)(1) Unless otherwise ordered by the court or agreed to in writing by the Designating

7    Party, a Party that seeks to disclose to ~~Designated~~officers, directors, and employees (including

8    House Counsel ~~)~~ of the Receiving Party any information or item that has been designated

9    "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant

10    to ~~paragraph~~Sections 7.2(b) or 7.3(b) first must make a written request to the Designating Party

11    that (1) sets forth ~~the~~their full name ~~of the Designated House Counsel~~ and the city and state of his

12    or her residence, and (2) describes ~~the Designated House Counsel's~~their current and reasonably

13    foreseeable future primary job duties and responsibilities in sufficient detail to determine if ~~House~~

14    ~~Counsel is involved, or may become involved, in~~they exercise any competitive decision-making.[11]

15    authority on behalf of the client.

16    (a)(2) Unless otherwise ordered by the court or agreed to in writing by the Designating

17    Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item

18    that has been designated "~~HIGHLY~~ CONFIDENTIAL," "HIGHLY CONFIDENTIAL --

19    ATTORNEYS' EYES ONLY" ~~[Optional:~~ or "HIGHLY CONFIDENTIAL – SOURCE CODE"~~]~~"

20    pursuant to ~~paragraph~~Sections 7.2(c), 7.3(c), or 7.4(b) first must make a written request to the

21    Designating Party that (1) identifies the general categories of ~~"HIGHLY CONFIDENTIAL --~~

22    ~~ATTORNEYS' EYES ONLY" [Optional:~~ or "HIGHLY CONFIDENTIAL -- SOURCE CODE"]~~

23    ~~information~~Designated Material that the Receiving Party seeks permission to disclose to the

24    Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary

26    ~~[11] It may be appropriate in certain circumstances to require any Designated House Counsel who receives "HIGHLY~~
27    ~~CONFIDENTIAL -- ATTORNEYS' EYES ONLY" information pursuant to this Order to disclose any relevant~~
~~changes in job duties or responsibilities prior to final disposition of the litigation to allow the Designating Party to~~
28    ~~evaluate any later-arising competitive decision-making responsibilities.~~

residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current

employer(s), (5) identifies each person or entity from whom the Expert has received compensation

or funding for work in his or her areas of expertise or to whom the expert has provided

professional services, including in connection with a litigation, at any time during the preceding

five years,[12] and (6) identifies (by name and number of the case, filing date, and location of court)

any litigation in connection with which the Expert has offered expert testimony, including through

a declaration, report, or testimony at a deposition or trial, during the preceding five years.[13], and

(7) identifies all pending patent applications on which the Person is named as an inventor, in

which the Person has any ownership interest, or as to which the Person reasonably anticipates

within two (2) years after final termination of this action participating in activities which would

come within the scope of the Prosecution Bar in Section 8 below.

(b) A Party that makes a request and provides the information specified in the preceding

respective paragraphs may disclose the subject Protected Material to the identified ~~Designated~~

~~House Counsel or Expert~~person unless, within 14 days of delivering the request, the Party receives

a written objection from the Designating Party. Any such objection must set forth in detail the

grounds on which it is based.

(c) A Party that receives a timely written objection must meet and confer with the

Designating Party (through direct voice to voice dialogue) to try to resolve the matter by

agreement within seven days of the written objection. If no agreement is reached, the Party

seeking to make the disclosure ~~to Designated House Counsel or the Expert~~ may file a motion as

provided in Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable)

seeking permission from the court to do so. Any such motion must describe the circumstances

---

[12] If the Expert believes any of this information is subject to a confidentiality obligation to a third-party, then the Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement.

[13] ~~It may be appropriate in certain circumstances to restrict the Expert from undertaking certain limited work prior to the termination of the litigation that could foreseeably result in an improper use of the Designating Party's "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" information.~~

United States District Court
Northern District of California

1    with specificity, set forth in detail the reasons why the disclosure to Designated House Counsel or

2    the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and

3    suggest any additional means that could be used to reduce that risk. In addition, any such motion

4    must be accompanied by a competent declaration describing the parties' efforts to resolve the

5    matter by agreement (i.e., the extent and the content of the meet and confer discussions) and

6    setting forth the reasons advanced by the Designating Party for its refusal to approve the

7    disclosure.

8         In any such proceeding, the Party opposing disclosure to Designated House Counsel or the

9    Expert shall bear the burden of proving that the risk of harm that the disclosure would entail

10   (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected

11   Material to its Designated House Counsel or Expert.

12        An initial failure to object to a Person under Section 7.5 shall not preclude the non-

13   objecting Party from later objecting to continued access by that Person for good cause. For

14   purposes of this section, "good cause" shall include an objectively reasonable concern that the

15   Person will, advertently or inadvertently, use or disclose Discovery Materials in a way or ways

16   that are inconsistent with the provisions contained in this Order. If an objection is made, the

17   Parties shall meet and confer via telephone or in person within seven (7) days following the

18   objection and attempt in good faith to resolve the dispute informally. If the dispute is not resolved,

19   the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer

20   to seek relief from the Court. The designated Person may continue to have access to information

21   that was provided to such Person prior to the date of the objection. If a later objection is made, no

22   further Protected Material shall be disclosed to the Person until the Court resolves the matter or

23   the Producing Party withdraws its objection. Notwithstanding the foregoing, if the Producing

24   Party fails to move for a protective order within seven (7) business days after the meet and confer,

25   further Protected Material may thereafter be provided to the Person.

26   8.   **PROSECUTION BAR** [OPTIONAL]

27        Absent written consent from the Producing Party, any individual who receives access to

28                                    19
                                                      STIPULATED PROTECTIVE ORDER
                                                      Case No. 24-cv-02296-JSC

United States District Court
Northern District of California

1  "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [Optional: or "HIGHLY

2  CONFIDENTIAL – SOURCE CODE"] information shall not be involved in the prosecution of

3  patents or patent applications relating to [insert subject matter of the invention and of highly

4  confidential technical information control systems that use accelerometer(s) or measurement(s)

5  based on taps or other similar gestures to be produced]. control a device, including without

6  limitation the patents asserted in this action and any patent or application claiming priority to or

7  otherwise related to the patents asserted in this action, before any foreign or domestic agency,

8  including the United States Patent and Trademark Office ("the Patent Office").[14] For purposes of

9  this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or

10 otherwise affecting the scope or maintenance of patent claims.[15] To avoid any doubt,

11 "prosecution" as used in this paragraph does not include representing a party challenging a patent

12 before a domestic or foreign agency (including, but not limited to, a reissue protest, *inter partes*

13 *review*, *ex parte* reexamination or *inter partes* reexamination). This Prosecution Bar shall begin

14 when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [Optional: or

15 "HIGHLY CONFIDENTIAL – SOURCE CODE"] information is first received by the affected

16 individual and shall end two (2) years after final termination of this action.[16]

17  9.      SOURCE CODE [OPTIONAL]

18         (a)      To the extent production of source code Source Code becomes necessary in this

19 case, a Producing Party may designate source code Source Code as "HIGHLY CONFIDENTIAL -

---

[14] It may be appropriate under certain circumstances to require Outside and House Counsel who receive access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information to implement an "Ethical Wall." The subject matter contemplated by this Prosecution Bar does not in any way reflect or limit the scope or subject matter of the Asserted Patent in this case. Nor does this Prosecution Bar in any way limit either party's right to assert any position as to infringement, validity, claim construction, or related issues. Neither party may rely on this Prosecution Bar as evidence of the other party taking a position inconsistent with any other position as to infringement, validity, claim construction, or related issues.

[15] Prosecution includes, for example, original prosecution, reissue and reexamination proceedings.

[16] *Alternative:* It may be appropriate for the Prosecution Bar to apply only to individuals who receive access to another party's "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" technical or source code information pursuant to this Order, such as under circumstances where one or more parties is not expected to produce "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information that is technical in nature or "HIGHLY CONFIDENTIAL – SOURCE CODE" information.

1    SOURCE CODE" if it comprises or includes confidential, proprietary or trade secret ~~source~~

2    ~~code~~Source Code.

3          (b)       Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE"

4    shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – SOURCE

5    CODE" ~~shall be subject to all of the protections afforded to~~and "HIGHLY CONFIDENTIAL –

6    ATTORNEYS' EYES ONLY" information ~~[Optional:~~, including the Prosecution Bar set forth in

7    Paragraph 8~~], and may be disclosed only to the individuals to whom "HIGHLY CONFIDENTIAL~~

8    ~~– ATTORNEYS' EYES ONLY" information may be disclosed, as set forth in Paragraphs 7.3 and~~

9    ~~7.4, with the exception of Designated House Counsel.~~[17].

10         (c)       Any ~~source code~~Source Code produced in discovery shall be made available for

11   inspection, in a format allowing it to be reasonably reviewed and searched, during normal business

12   hours (i.e., 9:00 a.m. through 6:00 p.m., local time) or at other mutually agreeable times, at ~~an~~

13   ~~office~~a location of the Producing Party's ~~counsel~~reasonable discretion or another mutually agreed

14   upon location.[18] ~~The source code shall be made available for inspection on a secured computer in a~~

15   ~~secured room without Internet access or network access to other computers, and~~ Upon reasonable

16   notice from the Receiving Party ~~shall not copy, remove, or otherwise transfer any portion of~~, the

17   ~~source code onto any recordable media or recordable device. The~~Producing Party ~~may visually~~

18   ~~monitor the activities of~~shall make reasonable efforts to accommodate the Receiving Party's

19   ~~representatives during any source code review, but only~~request for access to ~~ensure~~Source Code

20   outside of normal business hours. The Parties agree to cooperate in good faith such that ~~there is no~~

21   ~~unauthorized recording, copying, or transmission of~~maintaining the Producing Party's Source

22

23

       _____

24   [17] ~~It may be appropriate under certain circumstances to allow House Counsel access to derivative materials including~~
       ~~"HIGHLY CONFIDENTIAL - SOURCE CODE" information, such as exhibits to motions or expert reports.~~
25
       [18] ~~Alternative: Any source code produced in discovery shall be made available for inspection in a format through~~
26   ~~which it could be reasonably reviewed and searched during normal business hours or other mutually agreeable times~~
       ~~at a location that is reasonably convenient for the Receiving Party and any experts to whom the source code may be~~
27   ~~disclosed. This alternative may be appropriate if the Producing Party and/or its counsel are located in a different~~
       ~~jurisdiction than counsel and/or experts for the Receiving Party.~~

28                                                                21                                        STIPULATED PROTECTIVE ORDER
                                                                                                            Case No. 24-cv-02296-JSC

United States District Court
Northern District of California

1    Code shall not unreasonably hinder the ~~source code.~~[19]Receiving Party's ability to efficiently and

2    effectively conduct the prosecution or defense of this action.

3    ~~(d)    The Receiving Party may request paper copies of limited portions of source code~~(d)

4    _____    The Source Code shall be made available for inspection on a secured computer in a

5    secured room ("the Source Code Review Room") without Internet access or network access to

6    other computers,[20] and on which all access ports have been disabled (except for one printer port),

7    as necessary and appropriate to prevent and protect against any unauthorized copying, removal, or

8    other transfer of any portion of the Source Code outside or away from the computer on which the

9    Source Code is provided for inspection. Except as provided in this paragraph, no recordable media

10   or recordable devices, including without limitation sound recorders, computers, cellular

11   telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted

12   into the Source Code Review Room.  The Producing Party shall provide a room near the Source

13   Code Room in which the Receiving Party's outside counsel and/or experts may confer privately

14   by phone. If cellphone reception in that room is poor, the Producing Party shall provide a landline

15   telephone in that room to allow the Receiving Party's outside counsel and/or experts to confer

16   privately. The Receiving Party's Outside Counsel and/or Experts shall be entitled to take notes

17   relating to the Source Code and may bring notepads, paper, pencils, and pens into the Source Code

18   Review Room for this purpose. To facilitate notetaking during the review of Source Code, the

19   Producing Party shall provide, separate from the Source Code Computer, a secured computer

20   without Internet access or network access to other computers and on which all access ports have

21   been disabled (except for one printer port). The Receiving Party may print out the notes before

22   deleting the notes off the notetaking computer at the end of each review day. No Source Code may

23

24   _____

25   [19] ~~It may be appropriate under certain circumstances to require the Receiving Party to keep a paper log indicating the
     names of any individuals inspecting the source code and dates and times of inspection, and the names of any
     individuals to whom paper copies of portions of source code are provided.~~

26

27   [20] The Producing Party reserves the right to determine whether to provide a remote review from the Producing Party's
     Source Code Review Room via internet access.  Such access will be provided at the Producing Party's reasonable
     direction and control.

28                                        22                          STIPULATED PROTECTIVE ORDER
                                                                      Case No. 24-cv-02296-JSC

United States District Court
Northern District of California

1    be copied into any notes taken during the Source Code review. The Producing Party may not

2    review any such notes taken by the Receiving Party or its representatives. The Producing Party

3    may visually monitor, but may not record, the activities of the Receiving Party's representatives

4    during any Source Code review, and only to ensure that there is no unauthorized recording,

5    copying, or transmission of the Source Code. The Producing Party may not view the contents of

6    the display screen on the Source Code Computer or notetaking computer during the Receiving

7    Party's review. The Producing Party may require all persons viewing Source Code to sign in and

8    sign out each day they view Source Code.

9        (e)    Prior to the first inspection of any requested Source Code, the Receiving Party shall

10   provide thirty (30) days' notice of the Source Code that it wishes to inspect. The Receiving Party

11   shall provide fourteen (14) days' notice prior to any additional inspections if those inspections will

12   be at a location that is different from a site at which an inspection has already occurred and seven

13   (7) days' notice prior to any additional inspections if those inspections will be at the same location

14   as any previous inspection.[21] The Producing Party shall install tools that are sufficient for viewing

15   and searching the code produced, on the platform produced. The Receiving Party's outside counsel

16   and/or experts may request that commercially available software tools for viewing and searching

17   Source Code be installed on the secured computer, provided, however, that (i) the Receiving Party

18   possesses an appropriate license to such software tools; (ii) the Producing Party approves such

19   software tools; and (iii) such other software tools allow the Receiving Party to perform its review

20   of the Source Code consistent with all of the protections herein. The Receiving Party must provide

21   the Producing Party with the media containing such licensed software tool(s) reasonably in advance

22   of the date upon which the Receiving Party wishes to have the additional software tools available

23   for use on the secured computer. Timely and reasonable requests for the installation of such software

24   will not be unreasonably denied.

25

26

27   [21] In the event that an inspection of source code is requested within seven (7) or fourteen (14) days—whichever is the applicable notice period—of a deposition relating to source code, the parties will work together in good faith to accommodate that request.

28
                                23                        STIPULATED PROTECTIVE ORDER
                                                          Case No. 24-cv-02296-JSC

(f)     All persons who will review a Producing Party's Source Code on behalf of a Receiving Party, including members of a Receiving Party's outside law firm, shall be identified in writing to the Producing Party at least five (5) days in advance of the first time that such person reviews such Source Code. Such identification shall be in addition to any other disclosure required under this Order. Proper identification of all authorized persons shall be provided prior to any access to the Source Code Review Room. Proper identification requires showing, at a minimum, a photo identification card sanctioned by the government of any State of the United States, by the government of the United States, or by the nation state of the authorized person's current citizenship. Access to the Source Code Review Room or the secured computer may be denied, at the discretion of the supplier, to any individual who fails to provide proper identification.

(g)     The Receiving Party's Outside Counsel and/or Experts shall be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes and may not take such notes electronically on the secured computer itself. Unless otherwise agreed in advance by the Parties in writing, following each day of inspection under this Order, the Receiving Party's Outside Counsel and/or Experts shall remove all notes, documents, and all other materials from the Source Code Review Room. The Producing Party shall not be responsible for any items left in the room following each inspection session, and the Receiving Party shall have no expectation of confidentiality for any items left in the room following each inspection session without a prior agreement to that effect.

(h)     The Receiving Party may request paper copies of Source Code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraphparagraphs (c)-(d) in the first instance. The Producing Party shall provide all such source codeSource Code in paper form including bates numbers and the label "HIGHLY CONFIDENTIAL — SOURCE CODE." The printed pages shall constitute part of the Source Code produced by the Producing Party in this action.

(i)     The Producing Party may challenge the amount of source codeSource Code

United States District Court
Northern District of California

1   requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth

2   in ~~Paragraph~~Section 6 whereby the Producing Party is the "Challenging Party" and the Receiving

3   Party is the "Designating Party" for purposes of dispute resolution. [Haptic's Proposal: Any

4   printed portion that consists of more than twenty (20) pages of a continuous block of Source Code

5   shall be presumed to be excessive, and the burden shall be on the Receiving Party to demonstrate

6   the need for such a printed copy. Likewise, the Receiving Party's possession of more than 300

7   pages of Source Code in total at one time shall be presumed to be excessive.] [Apple's Proposal:

8   Any printed portion that consists of more than ten (10) pages of a continuous block of Source

9   Code or that brings the total set of printed source code to more than 250 pages total shall be

10   presumed to be excessive, and the burden shall be on the Receiving Party to demonstrate the need

11   for such a printed copy. For good cause, the Receiving Party may request to print additional pages

12   in excess of these limits, and the parties agree to discuss the request in good faith.]

13          (~e~j)    The Receiving Party shall maintain a record of any individual who has inspected

14   any portion of the ~~source code~~Source Code in ~~electronic or~~ paper form. The log shall include the

15   names of the reviewers and/or recipients of paper copies and locations where the paper copies are

16   stored. Upon reasonable notice to the Receiving Party by the Producing Party, the Receiving Party

17   shall provide a copy of this log to the Producing Party. [Haptic's Proposal: The Receiving Party

18   shall maintain all paper copies of any printed portions of the ~~source code~~Source Code in a manner

19   that prevents duplication of or unauthorized access to Source Code, including without limitation,

20   storing the Source Code in a secured, locked area~~.~~, when not in use or in transit.] [Apple's

21   Proposal: The Receiving Party shall maintain all paper copies of any printed portions of the

22   Source Code in a secured, locked area.]. The Receiving Party shall not create any electronic or

23   other images of the paper copies and shall not convert any of the information contained in the

24   paper copies into any electronic format. ~~The Receiving Party shall only make~~ absent express

25   written permission from the Producing Party or as otherwise provided herein. [Haptic's Proposal:

26   The Receiving Party shall only make up to three (3) additional paper copies, not including copies

27   attached to court filings or used at depositions, if such additional copies are reasonably necessary

28

United States District Court
Northern District of California

1  for the preparation of its case. The Receiving Party may also temporarily keep paper copies at: (i)

2  the Court for any proceedings relating to the Source Code, for the dates associated with the

3  proceedings; (ii) the sites where any depositions relating to the Source Code are taken, for the

4  dates associated with the depositions; and (iii) any intermediate location reasonably necessary to

5  transport the printouts or photocopies (*e.g.*, a hotel prior to a Court proceeding or deposition). The

6  Receiving Party will only transport pages or portions of Source Code as reasonably necessary for

7  the purpose of travel. Source Code will only be transported by the Receiving Party via hand carry,

8  either (a) on paper in a sealed envelope; or (b) with the Producing Party's consent, on password-

9  protected removable electronic media (*e.g.*, a DVD, CD-ROM, or flash memory "stick"). Further,

10  upon arrival at the destination, the Receiving Party will review Source Code only in only in a

11  locked hotel room and in the location of the deposition or proceeding, and only in the presence of

12  persons who may review the Source Code consistent with this Stipulated Protective Order.]

13  [Apple's Proposal: The Receiving Party shall only make up to three (3) **additional paper copies if**

14  **such additional copies are (1) necessary to prepare court filings, pleadings, or other papers**

15  **(including a testifying expert's expert report)**, (2) necessary for deposition, **or (32) otherwise**

16  **necessary for the preparation of its case.** Any paper copies used during a deposition shall be

17  retrieved by the Producing Party at the end of each day and must not be given to or left with a

18  court reporter or any other unauthorized individual.[22]].

19       (k)     [Haptic's Proposal: For depositions, the Receiving Party shall not bring more than

20  one copy of any printed Source Code, and the Source Code shall be transported consistent with the

21  limitations described in Section 9(j). At least ten (10) days before the date of the deposition, the

22  Receiving Party shall notify the Producing Party that it wishes to use Source Code at the deposition,

23  and the Producing Party shall bring printed copies of all Source Code to the deposition for use by the

24  Receiving Party.] [Apple's Proposal: For depositions, the Receiving Party shall not bring copies of

26  [22] The nature of the source code at issue in a particular case may warrant additional protections or restrictions. For
example, it may be appropriate under certain circumstances to require the Receiving Party to provide notice to the
27  Producing Party before including "HIGHLY CONFIDENTIAL – SOURCE CODE" information in a court filing,
pleading, or expert report.

28                                    26

any printed Source Code. Rather, at least ten (10) days before the date of the deposition, the Receiving Party shall notify the Producing Party that it wishes to use Source Code at the deposition, and the Producing Party shall bring printed copies of the Source Code to the deposition for use by the Receiving Party. For court proceedings and trial, at last ten (10) days before the date of any such event, the Receiving Party shall notify the Producing Party regarding any printed source code pages it intends to use and the Receiving Party shall bring the necessary copies.]. Copies of Source Code that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. All paper copies of Source Code brought to the deposition shall remain with the Producing Party's outside counsel for secure destruction in a timely manner following the deposition.

(l)     Except as provided in this sub-paragraph, absent express written permission from the Producing Party, which shall not be unreasonably withheld, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including by way of example only, the Receiving Party may not scan the Source Code to a PDF or photograph the code). [Haptic's Proposal: The Receiving Party may include Source Code excerpts in expert reports, court filings, and other litigation documents, including internal electronic drafts of such documents, provided that the documents are designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE." Yet, images or copies of Source Code shall not be included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible. Any court filings containing Source Code shall be filed under seal according to Civil Local Rule 79-5 and Section E of the Civil Standing Order for District Judge Jacqueline Scott Corley. If a Producing Party agrees to produce an electronic copy of all or any portion of its Source Code or the Receiving Party makes an electronic or any other copy for a Court filing, access to the Receiving Party's submission, communication, and/or disclosure of electronic files or other materials containing any portion of

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Source Code (paper or electronic) shall at all times be limited solely to individuals who are

2    expressly authorized to view Source Code under the provisions of this Order.] [Apple's Proposal:

3    Images or copies of Source Code shall not be included in correspondence between the Parties

4    (references to production numbers shall be used instead), and shall be omitted from pleadings and

5    other papers whenever possible. If a Party reasonably believes that it needs to submit a portion of

6    Source Code as part of a filing with the Court, the Parties shall meet and confer as to how to make

7    such a filing while protecting the confidentiality of the Source Code and such Source Code will

8    not be filed absent agreement from the Producing Party that the confidentiality protections will be

9    adequate.  If a Producing Party agrees to produce an electronic copy of all or any portion of its

10   Source Code or provide written permission to the Receiving Party that an electronic or any other

11   copy needs to be made for a Court filing, access to the Receiving Party's submission,

12   communication, and/or disclosure of electronic files or other materials containing any portion of

13   Source Code (paper or electronic) shall at all times be limited solely to individuals who are

14   expressly authorized to view Source Code under the provisions of this Order.].  Where the

15   Producing Party has provided the express written permission required under this provision for a

16   Receiving Party to create electronic copies of Source Code, the Receiving Party shall maintain a

17   log of all such electronic copies of any portion of Source Code in its possession or in the

18   possession of its retained consultants, including the names of the reviewers and/or recipients of

19   any such electronic copies, and the locations and manner in which the electronic copies are stored.

20   Additionally, any such electronic copies must be labeled "CONFIDENTIAL - ATTORNEYS'

21   EYES ONLY - SOURCE CODE" as provided for in this Order.

22   10.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER
            LITIGATION

23
            If a Party is served with a subpoena or a court order issued in other litigation that compels
24
     disclosure of any information or items designated in this action as "CONFIDENTIAL" or,"
25
     "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [Optional:," or "HIGHLY
26
     CONFIDENTIAL – SOURCE CODE"]" that Party must:
27

28                                            28

United States District Court
Northern District of California

1    (a) promptly notify in writing the Designating Party. Such notification shall include a copy

2    of the subpoena or court order;

3    (b) promptly notify in writing the party who caused the subpoena or order to issue in the

4    other litigation that some or all of the material covered by the subpoena or order is subject to this

5    Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

6    (c) cooperate with respect to all reasonable procedures sought to be pursued by the

7    Designating Party whose Protected Material may be affected.[23]

8    If the Designating Party timely seeks a protective order, the Party served with the subpoena

9    or court order shall not produce any information designated in this action as "CONFIDENTIAL"

10   of," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [Optional," or "HIGHLY

11   CONFIDENTIAL – SOURCE CODE"[" before a determination by the court from which the

12   subpoena or order issued, unless the Party has obtained the Designating Party's permission. The

13   Designating Party shall bear the burden and expense of seeking protection in that court of its

14   confidential material – and nothing in these provisions should be construed as authorizing or

15   encouraging a Receiving Party in this action to disobey a lawful directive from another court.

16   11.   A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS
            LITIGATION

17
18   (a)   The terms of this Order are applicable to information produced by a Non-Party in

     this action and designated as "CONFIDENTIAL" of," "HIGHLY CONFIDENTIAL –
19
     ATTORNEYS' EYES ONLY" [Optional," or "HIGHLY CONFIDENTIAL – SOURCE
20
     CODE"[." Such information produced by Non-Parties in connection with this litigation is
21
     protected by the remedies and relief provided by this Order. Nothing in these provisions should be
22
     construed as prohibiting a Non-Party from seeking additional protections.
23
24   (b)   In the event that a Party is required, by a valid discovery request, to produce a Non-

25   Party's confidential information in its possession, and the Party is subject to an agreement with the

26
     _____
27   [23] The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to
     afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from
     which the subpoena or order issued.
28                                                      29_____ _____    STIPULATED PROTECTIVE ORDER
                                                                                       Case No. 24-cv-02296-JSC

Non-Party not to produce the Non-Party's confidential information, then the Party shall:

      1.     promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

      2.     promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

      3.     make the information requested available for inspection by the Non-Party.

(c)     If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Non-Party before a determination by the court.[24] Absent a court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this court of its Protected Material.

12.     <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

---

[24] The purpose of this provision is to alert the interested parties to the existence of confidentiality rights of a Non-Party and to afford the Non-Party an opportunity to protect its confidentiality interests in this court.

STIPULATED PROTECTIVE ORDER
Case No. 24-cv-02296-JSC

13.   <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED</u>
<u>MATERIAL</u>

When a Producing Party gives notice to Receiving Parties that certain inadvertently produced material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).[25] This provision is not intended to modify whatever procedure may be established in an e-discovery order that provides for production without prior privilege review. ~~Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an agreement on the effect of disclosure of a communication or information covered by the attorney-client privilege or work product protection, the parties may incorporate their agreement in the stipulated protective order submitted to the court.~~

Pursuant to Federal Rule of Evidence 502(d) and (e), the production of a privileged or work product protected document is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of a privileged or work product protected document in this case as part of a production is not itself a waiver. Nothing in this Order shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI. Moreover, nothing in this Order shall be interpreted to require disclosure of information subject to privacy protections as set forth in law or regulation, including information that may need to be produced from outside of the

---

[25] ~~Alternative: The parties may agree that the recipient of an inadvertent production may not "sequester" or in any way use the document(s) pending resolution of a challenge to the claim of privilege or other protection to the extent it would be otherwise allowed by Federal Rule of Civil Procedure 26(b)(5)(B) as amended in 2006. This could include a restriction against "presenting" the document(s) to the court to challenge the privilege claim as may otherwise be allowed under Rule 26(b)(5)(B) subject to ethical obligations.~~

~~An alternate provision could state: "If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return or destroy the specified information and any copies it has and may not sequester, use or disclose the information until the claim is resolved. This includes a restriction against presenting the information to the court for a determination of the claim."~~

United States District Court
Northern District of California

United States District Court
Northern District of California

1    United States and/or may be subject to foreign laws.

2    14.    <u>MISCELLANEOUS</u>

3        14.1    <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any person to

4    seek its modification by the court in the future.

5        14.2    <u>Right to Assert Other Objections</u>. By stipulating to the entry of this Protective

6    Order no Party waives any right it otherwise would have to object to disclosing or producing any

7    information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no

8    Party waives any right to object on any ground to use in evidence of any of the material covered

9    by this Protective Order.

10        14.3    [*Optional.* Export Control. Disclosure of Protected Material shall be subject to all

11    applicable laws and regulations relating to the export of technical data contained in such Protected

12    Material, including the release of such technical data to foreign persons or nationals in the United

13    States or elsewhere. The Producing Party shall be responsible for identifying any such controlled

14    technical data, and the Receiving Party shall take measures necessary to ensure

15    compliance.]Protected Material must be stored and maintained by a Receiving Party at a location

16    in the United States and in a secure manner that ensures that access is limited to the persons

17    authorized under this Order.[26]    To ensure compliance with applicable United States Export

18    Administration Regulations, Protected Material may not be exported outside the United States or

19    released to any foreign national (even if within the United States).

20        14.4    <u>Filing Protected Material</u>. Without written permission from the Designating Party

21    or a court order secured after appropriate notice to all interested persons, a Party may not file in

22    the public record in this action any Protected Material. A Party that seeks to file under seal any

23    Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed

24    under seal pursuant to a court order authorizing the sealing of the specific Protected Material at

25    issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request

26

27    [26] If the Receiving Party identifies a reasonable need for one or more of its experts to access Protected Material
28    outside of the United States, the Parties agree to meet and confer in good faith regarding a potential accommodation.

32                                    STIPULATED PROTECTIVE ORDER
                                      Case No. 24-cv-02296-JSC

1  establishing that the Protected Material at issue is privileged, protectable as a trade secret, or

2  otherwise entitled to protection under the law. If a Receiving Party's request to file Protected

3  Material under seal pursuant to Civil Local Rule 79-5 is denied by the court, then the Receiving

4  Party may file the Protected Material in the public record pursuant to Civil Local Rule 79-5 unless

5  otherwise instructed by the court. Nothing in this section shall in any way limit or detract from this

6  Order's requirements as to Source Code.

7       14.5    Data Security.

8       (a)    [Haptic's Proposal: Receiving Party shall implement an information security

9  management system ("ISMS") to safeguard Protected Material, including reasonable and

10 appropriate administrative, physical, and technical safeguards, and network security and

11 encryption technologies governed by written policies and procedures, designed to protect against

12 any reasonably anticipated threats or hazards to the security of Protected Material and to protect

13 against unauthorize access to Protected Material. To the extent a party or person does not have an

14 ISMS, they may comply with this provision by having the Protected Material managed by and/or

15 stored with eDiscovery vendors, claims administrators, or other platforms that maintain such an

16 ISMS.] [Apple's Proposal: Receiving Party shall implement an information security management

17 system ("ISMS") to safeguard Protected Material, including reasonable and appropriate

18 administrative, physical, and technical safeguards, and network security and encryption

19 technologies governed by written policies and procedures, which shall comply with at least one of

20 the then-current versions of the following standards: (a) the International Organization for

21 Standardization's 27001 standard; (b) the National Institute of Standards and Technology's

22 (NIST) 800-53 standard; (c) the Center for Internet Security's Critical Security Controls; or (d) the

23 most recently published version of another widely recognized industry or government

24 cybersecurity framework.].   The Parties shall implement multi-factor authentication[27] [Haptic's

25

26 [27] Multi-factor authentication is "[a]uthentication using two or more factors to achieve authentication. Factors are (i)
    something you know (e.g., password/personal identification number); (ii) something you have (e.g., cryptographic
27 identification device, token); and (iii) something you are (e.g., biometric)." National Institute of Standards and

28                                        33

United States District Court
Northern District of California

1    Proposal: to prevent unauthorized access to] [Apple's Proposal: for any access to] Protected

2    Material and implement encryption of all Protected Material (i) in transit outside of network(s)

3    covered by the Party's ISMS (except as necessary to submit documents to the court) and (ii) at rest

4    where reasonably practical.

5          (b)     If Receiving Party becomes aware of any unauthorized access, use, or disclosure of

6    Protected Material or devices containing Protected Material ("Data Breach"), Receiving Party

7    shall promptly, and in the most expedient time possible and without unreasonable delay, consistent

8    with the legitimate needs of law enforcement and any measures necessary to determine the scope

9    of the Data Breach and restore the reasonable integrity of affected data system(s), notify

10   Producing Party in writing and fully cooperate with Producing Party as may be reasonably

11   necessary to (a) determine the source, extent, or methodology of such Data Breach, (b) to recover

12   or to protect Protected Material, and/or (c) to satisfy Producing Party's legal, contractual, or other

13   obligations. For the avoidance of doubt, notification obligations under this Section 14.5 arise when

14   the Receiving Party both (a) learns of a Data Breach, and (b) learns that any of the Producing

15   Party's Protected Material is potentially subject to the Data Breach.  The notification obligations

16   set forth in this Section 14.5 do not run from the time of the Data Breach itself.

17         (c)     Receiving Party shall reasonably comply with Producing Party's reasonable

18   request(s) that Receiving Party investigate, remediate, and mitigate the effects of a Data Breach

19   and any potential recurrence and take all reasonable steps to terminate and prevent unauthorized

20   access.  Receiving Party shall provide any information that is reasonably requested by Producing

21   Party and that is reasonably necessary to contain, mitigate, or remediate such Data Breach. For the

22   avoidance of doubt, nothing in this Section 14.5 is intended to create a waiver of any applicable

23   privileges, including privileges applicable to a Party's investigation and remediation of a Data

24   Breach.

25

26   ────────────────────

27   Technology (NIST), Special Publication SP 1800-12, Appendix B at 63, available at
     https://nvlpubs.nist.gov/nistpubs/SpecialPublications/ NIST.SP.1800-12.pdf; *see also* NIST, Special Publication 800-

28   53, at 132, available at https://nvlpubs.nist.gov/nistpubs/SpecialPublications/NIST.SP.800-53r5.pdf.

United States District Court
Northern District of California

1         (d)    If Receiving Party is aware of a Data Breach, the Parties shall meet and confer in

2    good faith regarding any adjustments that should be made to the discovery process and discovery

3    schedule in this action.

4         (e)    [Haptic's Proposal: (Delete Section 14.5(e)] [Apple's Proposal: In the event of a

5    Data Breach affecting Protected Material of Designating Party, at Designating Party's request,

6    Receiving Party within ten (10) business days shall provide a copy of its most recent ISMS

7    policies and procedures that relate to the safeguarding of Protected Materials and that preceded the

8    Data Breach.]

9         (f)    Receiving Party shall comply with this Section 14.5 and any applicable security,

10   privacy, data protection, or breach notification laws, rules, regulations, or directives ("Applicable

11   Data Law"). If Receiving Party is uncertain whether a particular practice would conform with the

12   requirements of this Section 14.5, it may meet and confer with the other Parties; if any Party

13   believes that the proposed practice would violate this Protective Order, it may, within 10 business

14   days, bring the dispute to the Court. The Party challenging the proposed practice would bear the

15   burden of demonstrating a violation.

16   15.   FINAL DISPOSITION

17       Within 60 days after the final disposition of this action, as defined in ~~paragraph~~Section 4,

18   each Receiving Party must return all Protected Material to the Producing Party or destroy such

19   material. As used in this subdivision, "all Protected Material" includes all copies, abstracts,

20   compilations, summaries, and any other format reproducing or capturing any of the Protected

21   Material. Whether the Protected Material is returned or destroyed, the Receiving Party must

22   submit a written certification to the Producing Party (and, if not the same person or entity, to the

23   Designating Party) by the 60-day deadline that (1) identifies (by category, where appropriate) all

24   the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has

25   not retained any copies, abstracts, compilations, summaries or any other format reproducing or

26   capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled to

27   retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts,

28

legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).


IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

~~DATED:~~ _____ ~~_____~~
~~Attorneys for Plaintiff~~

~~DATED:~~ _____ ~~_____~~
~~Attorneys for Defendant~~ Dated:  June 4, 2024                                FISH & RICHARDSON P.C.

By:  /s/ Joy B. Kete _____
     Joy B. Kete

Attorneys for Defendant
Apple Inc.

Dated:  June 4, 2024                    SUSMAN GODFREY LLP

By:  /s/ Connor Cohen _____
     Connor Cohen

Attorneys for Plaintiff
Haptic, Inc.


PURSUANT TO STIPULATION, IT IS SO ORDERED.

DATED: _____ _____
                                ~~[Name of Judge]~~
                                Hon. Jacqueline Scott Corley
                                United States District/Magistrate Judge

36

<u>EXHIBIT A</u>

<u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____ [print or type full name], of

_____[print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California on _____[date] in the case of ~~_____[insert formal name of the case and the number and initials assigned to it by the court].~~ HAPTIC, INC. v. APPLE INC., Case No. 24-cv-02296-JSC. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of

_____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.


Date: _____

City and State where sworn and signed: _____

Printed name: _____
　　　　　　　　　[printed name]

Signature: _____

[signature]

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STIPULATED PROTECTIVE ORDER
Case No. 24-cv-02296-JSC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HAPTIC, INC.,

        Plaintiff,

    v.

APPLE, INC.,

        Defendant.

Case No.  24-cv-02296-JSC

**ORDER RE: PROTECTIVE ORDER**

Re: Dkt. No. 78

The Court accepts the parties' proposed stipulated protective order and as to the disputed provisions rules as set forth below.

**1.  Source Code Page Limits (Section 9(i))**

The Court cannot make a reasoned distinction between the parties' proposals as they fail to explain the likelihood more than 10 pages of a continuous block of Source Code will be relevant to a claim or defense in this action.  So, the Court accepts Haptic's proposal with the following modification: any printed portion consisting of more than 15 pages of a continuous block of Source Code and 275 total pages shall be presumed excessive.  Of course, the parties are welcome to agree to more on their own without Court intervention.

**2.  Use of Source Code in Depositions and Court (Sections 9(j) and (k))**

The Court adopts Apple's proposal with the following exception: If the deposition is not readily accessible from where the Receiving Party is keeping the paper copy of the Source Code or where the Producing Party has made the Source Code available to the Receiving Party, the Receiving Party may advise the Producing Party in advance of a location near the deposition location where the Source Code can be kept locked and secured for review in advance of the deposition.  Upon 10-days advance request, the Producing Party must deliver the Source Code to

that location at least 48 hours before the deposition.  The Producing Party is responsible for

retrieving the paper Source Code from that locked and secured location.  The same process shall

apply to court proceedings.

**3. Source Code in Expert Reports and Court Filings**

The Court adopts Apple's proposal.  If and when it becomes necessary to disclose to the

Court and in expert reports the actual Source Code, as opposed to a citation to the Source Code,

the parties shall meet and confer on how to do so.  In the absence of agreement, the parties shall

bring the dispute to the Court.  It should go without saying that no expert's opinion will be

stricken because it failed to quote the lines of Source Code to which the expert was referring.

**4. Data Security**

**14.5(a):** The Court adopts Haptic's proposal except for the line: "To the extent a party or

person does not have an [information security management system], they may comply with this

provision by having the . . . ."  This sentence renders the first sentence meaningless, and enables

Haptic and its outside counsel to shift responsibility for data security to third parties over whom

Apple has no knowledge and this Court may lack authority.  If Haptic or its counsel do not have

an information security management system in place they should tell Apple and the Court now.

The Court does not understand the difference between "to prevent unauthorized access to"

and "for any access to" as the parties agree multi-factor authentication shall be implemented.  So,

the protective order will say: "shall implement multi-factor authentication."

**14.5(e):** The Court accepts Haptic's proposal as 14.5(e) is not aimed at the protection of

confidential material.  Of course, if such a data breach occurs and the Receiving Party refuses to

provide a copy of its information security management system policies and procedures to the

Designating Party, the Court can order the Receiving Party do so if warranted.

**IT IS SO ORDERED.**

Dated: June 10, 2024

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

2